Argued March 29, reversed in part, modified in part and remanded May 6, reconsideration denied June 12, petition for review allowed July 30, 1974

## GARNETT, *Appellant, v.* GARNETT (No. 340962), *Respondent.*

521 P2d 1054

*Gerald H. Robinson,* Portland, argued the cause for appellant. With him on the brief were King & Merry, Portland.

308

*George C. Reinmiller,* Portland, argued the cause for respondent. With him on the brief were Cake, Hardy, Buttler, McEwen & Weiss, Portland.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

Plaintiff-wife was divorced from defendant-husband in a decree dated January 29, 1969 which, among other things, approved their property settlement agreement which had been received in evidence and it was made a part of the decree. In pronouncing its decree the court stated that the property settlement agreement was "given the force and effects of the decree."

Wife appeals in this motion proceeding by the husband for modification of the decree and property settlement agreement. Part of the motion was granted on September 12, 1973. Wife contends that the trial court erred in its order by modifying the property settlement agreement and decree in two respects: (1) by changing the requirements that husband pay for certain of wife's household expenses, and (2) by relieving him of the cost of automobile and its expenses, both subsequent to her remarriage.

Husband's motion requested elimination of "all future obligation" (I) "to the support * * *"; (II) "to pay * * * towards the purchase of [wife's] home * * *"; and (III) "to pay * * * household expenses [and] * * * automobile expenses * * *."

The trial court's formal order simply eliminated the household expenses of "Paragraph I" of the agreement and the automobile expenses of "Paragraph IV"

of the agreement and stated that "all other terms and conditions of said Decree shall continue * * *." Thus, it appears that no action was taken on Requests (I) and (II) above unless it could be termed denial thereof. Husband did not cross-appeal.

Evidence was that the property settlement agreement was negotiated over a period starting before October 1968 and lasting until January 1969, which was a period in which husband was seeking freedom from his long-time marriage so that he could remarry. The parties had one grown, married child. Wife was represented by counsel but husband, who was an optometrist and a high school mathematics teacher, was unrepresented, a matter of his own choice. At least two drafts of the settlement agreement were prepared and executed, the second replacing the first. No allegations of fraud or duress in the making of the contract have been asserted. We find that the parties were dealing at arms' length and knew what they were doing when the final agreement was entered into. The agreement provided for the division of several parcels of real property, a private school, personal property, etc. After sales of property were completed after the decree was entered, the values of all the property divided under the terms of the agreement proved to be relatively equal, although the parties are not now in agreement that this was so. The controversy in this motion revolves around four provisions of the property settlement agreement:

"I

"Husband will execute a deed conveying to wife his interest in the premises located at 2210 S.W. Dewitt Street, Portland, Oregon. Husband will pay off and discharge the balance due on the purchase

price of this property and it will become the sole property of the wife, free and clear. In the event that the wife wishes to continue residing at said premises, husband will continue to pay the insurance, taxes and all household utilities such as heat, light, water, garbage collection and telephone, and maintain said premises in a livable condition so long as the wife occupies same. [This was for a $20,000 residence the wife received.]

"\* \* \* \* \*

## "IV

"Husband agrees to provide the wife with the use of an automobile for such period and at such times as the wife may require its use and husband further agrees to pay for the insurance, licensing, maintenance and upkeep on said automobile.

"\* \* \* \* \*

## "VII

"It is the present intention of the wife to continue to be gainfully employed. However, in the event that she should be forced to discontinue her employment either temporarily or permanent[ly] due to illness or injury, husband agrees to pay to the wife each month by way of alimony such an amount as would make up the difference between whatever disability compensation she might receive from her employer during the period of disability and the total amount of $350 per month.

"\* \* \* \* \*

## "XI

"It is specifically agreed between the parties hereto that the remarriage of the wife shall not in any way effect [sic] or relieve husband of any of the obligations agreed to herein.

"\* \* \* \* \*"

At the time the agreement was executed wife had

been diagnosed as having diabetes, and the evidence fairly indicates that both parties expected that she would have health difficulties which might have impaired her future earning capacity. For many years she had been employed in a bank, and had made substantial contributions to the family finances. She continued to work through her bad health period. Sometime after the divorce wife's health difficulties cleared up and it was learned that she did not have diabetes. Husband contends that the challenged provisions of the agreement and decree were in the nature of alimony and are thus subject to change upon proof of changed circumstances, regardless of inclusion in the property settlement agreement. As a general proposition, this is correct if the provisions are alimony. *Feves v. Feves,* 198 Or 151, 254 P2d 694 (1953); *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943). Wife contends that the only provision of the agreement which contemplated support dependent upon her physical condition was Paragraph VII of the contract, quoted above, and that the provisions concerning household expenses and the automobile were in the nature of a division of the property which was executory over a long period of time.

The trial court in its written order modifying the decree found only that there had been a change of circumstances warranting modification of the decree. There is nothing from the court in the record otherwise to show the basis of the trial court's finding. However, a copy of a letter opinion from the judge is included without challenge in the abstract submitted with wife's brief. It discusses Paragraphs I, IV and XI, supra, of the agreement, ignores Paragraph VII thereof and apparently also Request (I) of the motion, supra, without explanation therefor.

The evidence indicates that possibly the $20,000 home (Paragraph I, agreement) was completely paid for through the husband's transferring to wife his interest in some other property. In any event, the court's letter opinion (but not the formal order which appears to have been drawn pursuant thereto) states the decree should be amended by "deleting * * * household expenses *other than discharging the mortgage incumbrance* * * *." (Emphasis supplied.)

With reference to Paragraph VII of the agreement, we see nothing except one statement in wife's testimony (to the effect she is no longer interestd in it) to explain why the court and the parties seemed to leave its provisions in effect, or unsettled. That formed the basis for much of the evidence and husband's concern. Perhaps this was attributable to an oversight in drawing up the formal order.

The letter opinion also states:

"It is my opinion that the payments, no matter how they are labeled, are and should be considered alimony and not a division of assets. It is significant that at the time of the property settlement, the husband was not represented by counsel. He was anxious to be free of his former wife so that he could remarry * * *.

"* * * * * *

"The provision of the decree specifying that remarriage of the wife shall not affect the husband's obligation is an unreasonable provision. To require an ex-husband to support an ex-wife who has remarried is unconscionable."

These findings must be considered the basis for the modification order, in addition to a finding that there had been a change of circumstances.

It does not appear that the exact question pre-

sented here has previously been decided in Oregon. In *Prime v. Prime,* supra, 172 Or at 42-3, the court said:

"* * * [T]here may be instances in which even an executory agreement for future periodical payments, when approved and incorporated in a decree, should be held invulnerable to modification, even in the event of changed conditions. For example, if husband and wife are each the owners of real property, and if they agree that in lieu of a division of their property between them the rights of the wife shall be liquidated by means of payments in the nature of an annuity, and if the agreement shows and the court finds that such provision was adopted as and constitutes a fair method of liquidating the actual property rights of the wife and approves the agreement in the decree, we suppose that such payments in the nature of an annuity would not be subject to later modification in the event of changed conditions. *Parker v. Parker,* 193 Cal. 478, 225 P. 447. The difficulty is in drawing the line between approved agreements in the nature of alimony which are subject to modification and approved agreements in the nature of an annuity employed as a means of adjusting the wife's property rights * * *."

In *Prime* the Supreme Court was not considering a contract where the parties, dealing at arm's length, expressly provided that payments to the wife should survive a remarriage. That is the situation we have here, although the situation we have here is otherwise much like that described in the *Prime* quote, above. The writer in an annotation on the law applicable to situations like that at bar[1] in Annotation, 48 ALR2d 318, 327-28 (1956), said:

"Ordinarily, no questions of construction arise

---

[1] The note at Annotation, 48 ALR2d 318-19 (1956), says it deals with agreements not made a part of the divorce decree, but

where a separation agreement, by its terms, unequivocally provides that a money obligation imposed by the agreement upon the husband shall, or shall not, terminate upon the wife's remarriage * * *." (Footnotes omitted.)

At Annotation, 48 ALR2d 270, 310 (1956), in an allied annotation, it was said:

"A specific agreement * * * to pay * * * stipulated sums during her [wife's] life has been held * * * when incorporated in a divorce decree, as to be unaffected by the wife's remarriage * * *."

The cases cited by the annotator support the rule that a clear statement such as that which we have in Paragraph XI of the instant settlement agreement must be given effect, e.g., see *Sullivan v. Sullivan,* 215 Ala 627, 111 So 911 (1927); *Spear v. Spear,* 158 Md 672, 149 A 468 (1930); and *Krick v. Krick,* infra.

In *Warrington v. Warrington,* 160 Or 77, 82, 83 P2d 479 (1938), the court said:

"* * * It should not be the policy of the court to require two or more men to support * * * the same woman."

However, the court there was dealing with straight alimony, and no agreement like Paragraph XI of the agreement at bar.

In *Nelson v. Nelson,* 181 Or 494, 500, 182 P2d 416 (1947), the court said:

"* * * It would not be good public policy to compel a divorced husband to support his former wife after she had remarried, except under extraordinary conditions * * *."

in the next sentence says: "* * * In some of the cases * * * the * * * agreement has been made part of the divorce decree, * * *" but the court has given no weight to that fact. "* * * Cases of this type are referred to by way of illustration."

But the court went on to hold that periodic payments until they totaled $700, which was called for in a property settlement agreement, were not alimony but in nature of property settlement, and were enforceable by the wife after remarriage.

In *Bennett v. Bennett,* 208 Or 524, 302 P2d 1019 (1956), the court held that $2,000 "lump sum alimony" decreed was not alimony, but a property settlement that was enforceable after remarriage, and repeated language from *Nelson*:

> " '*Alimony, however, is used in some instances to designate the amount allowed the divorced wife in settlement of property rights and when so used is not affected by her remarriage * * *.*
>
> " '* * * * *.' " (Emphasis theirs.) 208 Or at 531.

In *Ross v. Ross,* 240 Or 561, 403 P2d 19 (1965), the court reviewed most of the cases discussed above and came to a conclusion consistent with them.

In none of these cases does it appear that the parties had included a provision in their agreement like Paragraph XI of the agreement at bar. It appears the trial court in the instant case concluded that if future payments would contribute to wife's support after she remarried, Paragraph XI would be against public policy in that respect and unenforceable. We doubt that such a conclusion is warranted. We find no cases directly in point in Oregon, but as mentioned above, the ALR annotator says there is no question of construction when there is an unequivocal provision like Paragraph XI.

An example of cases supporting the rule so stated is *Krick v. Krick,* 76 Nev 52, 348 P2d 752 (1960),

where it was held that where the husband received property under the property settlement agreement and agreed to make monthly payments "for life" to the wife those payments must continue after her remarriage despite a Nevada statute which specifically provided that alimony payments cease with the remarriage of the wife unless the decree "otherwise provided." The trial court had originally decreed that the property settlement be complied with and the husband had moved to modify the decree. The Nevada court cited *Hilton v. McNitt,* 49 Cal 2d 79, 315 P2d 1 (1957), which recognizes that under a similar California statute the parties can agree in a property settlement agreement that support payments will continue after remarriage, and the agreement will be enforced.

In *Gush v. Gush,* 14 Misc 2d 146, 178 NYS2d 429 (Sup Ct 1958), *affirmed* 9 App Div 2d 815, 192 NYS2d 678 (1959), a case with facts somewhat similar to those at bar was under consideration. When the property settlement agreement was entered into, the wife was ill. The agreement required weekly payments for the wife's support for life regardless of remarriage. The agreement was made a part of the decree. The wife recovered and remarried. In a separate motion proceeding, the support provision had been expunged from the decree, without prejudice to the wife's seeking enforcement of the contract in a separate action. *Gush* was the separate action. New York had a statute terminating support payments after remarriage. The court said:

> "But public policy does not strike down contracts in which, *as a part of the agreement,* the husband has * * * [agreed] to make payments to the wife after her [re]marriage or during her natural life.

[Citing nine New York cases.] * * *" (Emphasis supplied.) 178 NYS2d at 431.

In *Unander v. Unander*, 265 Or 102, 107-08, n 3, 506 P2d 719 (1973), the Oregon Supreme Court quoted the language which we have quoted above from *Prime*. It concluded that an antenuptial agreement concerning alimony in the event of divorce will be enforced

"* * * unless the spouse has no other reasonable source of support.

"* * * * *

"This * * * has the merit of according the parties * * * the same freedom of contract that other parties are accorded but preserving to the state the right to invalidate the contract when required to insure adequate support for one of its citizens." (Footnotes omitted.) 265 Or at 107-08.

That case involved an antenuptial agreement as distinguished from an agreement in contemplation of dissolution of the marriage, but we see no reason why the same principle should not apply. The court should not save a person from the bargain he makes under fair bargaining conditions, after he finds the consideration unattractive. If the husband was under pressure because of his desire to remarry, and this led him into making a bad bargain, it still is of his own making. In the case at bar, the evidence showed that the husband continues to have a "reasonable source of support," even though there may have been a change of circumstances, as the trial court found.

For the reasons set out above, the trial court order must be reversed as to its provisions relating to Paragraphs I and IV of the agreement and the

matter returned for entry of a new order consistent with this opinion and responsive to the motion.

We have noted above that it appears the trial court indicated in its letter opinion that the requirement that the home covered by Paragraph I of the agreement must be paid for by husband is still effective, if it is still executory. With this we agree, and the new formal order should so state.

Paragraph VII of the agreement appears to us to have been entered into under the mutual misapprehension that wife's misdiagnosed diabetes might render her unable to work. Perhaps husband's best remedy in this regard was a separate suit for rescission of Paragraph VII based on mutual mistake of fact, but the remedy appears to be within the motion husband made.

We do not view the evidence supporting a mutual mistake as applying in the same way to Paragraphs I and IV (the household and automobile expenses) that it does to Paragraph VII. The expenses relate to one house which wife got in exchange for their family home, and "an automobile." From reading Paragraph IV as a whole, we do not think this can fairly be interpreted as meaning more than one automobile.

We hold that Request (I) of the motion shall be allowed as to Paragraph VII of the agreement, and the motion denied as to Requests (II) and (III).

Reversed in part, modified in part and remanded. Costs to neither party.

SCHWAB, C. J., dissenting.

I would modify the divorce decree by eliminating the husband's obligations to pay the wife's household

and automobile expenses and a monthly sum to her if she becomes unemployed. Specifically, I would hold: (1) the divorce decree, in so far as it relates to alimony, is subject to modification based on a change of circumstances regardless of the fact that the decree incorporates an agreement of the parties; (2) this is true notwithstanding paragraph XI of the agreement that states "remarriage of the wife shall not * * * relieve husband of any of the obligations agreed to herein"; (3) the provisions for the payment of the wife's household and automobile expenses and a monthly sum to her are in the nature of alimony; and (4) the husband has proved a substantial change of circumstances.

In order to reach these conclusions it is unnecessary to go beyond Oregon statutes and cases.

    (1) A divorce decree that incorporates the parties' agreement is subject to modification to the same extent as any other divorce decree.

ORS 107.135 provides:

"(1) The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by law for service of a summons, to:

"(a) Set aside, alter or modify so much of the decree as may provide for the appointment and duties of trustees, for the custody, support and welfare of the minor children, or for the support of a party * * *.

"* * * * *."

It has long been held that the statutory authority to "modify so much of the decree as may provide for * * * the support of a party" is not limited to a decree composed by a trial judge, but, instead, the authority

extends to a decree that incorporates an agreement of the parties. *Jensen v. Jensen,* 249 Or 423, 438 P2d 1013 (1968); *Ross v. Ross,* 240 Or 561, 403 P2d 19 (1965); *Feves v. Feves,* 198 Or 151, 254 P2d 694 (1953); *Nelson v. Nelson,* 181 Or 494, 182 P2d 416 (1947); *Briggs v. Briggs,* 178 Or 193, 165 P2d 772, 166 ALR 666 (1946); *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943); *Warrington v. Warrington,* 160 Or 77, 83 P2d 479 (1938); *Warner v. Warner,* 145 Or 541, 28 P2d 625 (1934); *Phy v. Phy,* 116 Or 31, 236 P 751, 240 P 237, 42 ALR 588 (1925).

In *Jensen,* the court stated that the provisions of a decree, incorporating the parties' agreement "for monthly support payments" were "subject to change under changing conditions." 249 Or at 431.

In *Feves,* the parties' agreement had been incorporated in a divorce decree. The court stated "the right to alimony is statutory and is not based on any contractual obligations," and therefore the decree "was subject to modification upon changed conditions." 198 Or at 158-59.

In *Briggs,* the court stated:

"* * * [T]he agreement of the parties made in anticipation of divorce does not constitute a bar to a modification of a decree for alimony if the evidence satisfactorily shows that such decree should be modified by reason of changed conditions." 178 Or at 198.

In *Prime,* the court stated:

"* * * As to the executory provisions of an agreement [incorporated in a divorce decree], if they are found to be in the nature of alimony, the same power which may refuse to approve them in the first instance may also modify them after ap-

proval in the event of changed conditions * * *." 172 Or at 46.

In *Warrington,* the court stated:

"Undoubtedly the decided trend of modern authorities is to the effect that, where a court has the power vested in it by statute to modify a decree for alimony, the exercise of such power is not affected by the fact that the parties agreed concerning the amount of alimony to be paid and that such stipulation was incorporated in the decree * * *." 160 Or at 81.

Several reasons have been stated for the rule that denies conclusive effect to the parties' alimony agreement when incorporated in a divorce decree. In *Warner v. Warner,* supra, the court stated that such an agreement is "not strictly a contract," but "in the nature of a stipulation in lieu of testimony," and "is made in contemplation of the statute * * * giving the court power to modify that portion of the decree" relating to support. 145 Or at 545. In *Prime v. Prime,* supra, the court quoted with approval from *Herrick v. Herrick,* 319 Ill 146, 149 NE 820 (1925):

" 'In the instant case the agreements, which * * * were incorporated in the decree as a proper provision of alimony, became merged in the decree when entered, and thereupon lost their contractual nature, at least, to the extent that the court has the power to change and modify the decree, upon the application of either party, when a change of circumstances justifies the modification.' *Herrick v. Herrick,* supra, 149 N.E. at p. 823." 172 Or at 48.

In *Warrington v. Warrington,* supra, the court implied that any other result would be unacceptable because it would allow a "private agreement" to "oust the court of jurisdiction" to modify support obligations pursuant to ORS 107.135 (1) (a). 160 Or at 80.

(2) The court's authority to modify is not limited by paragraph XI of the parties' agreement.

Paragraph XI of the parties' agreement provided that "remarriage of the wife shall not * * * relieve husband of any of the obligations agreed to herein." This, along with the rest of the parties' agreement, was incorporated in the divorce decree.

In *Prime v. Prime,* supra, the parties' agreement was incorporated in the divorce decree. The decree stated that the parties' agreement

" '* * * is hereby ratified, confirmed and approved, and that said settlement shall forever remain binding upon the parties to this suit.' " 172 Or at 39.

In discussing the effect of this language in the decree the Supreme Court stated:

"It further appears that where by statute the court has power to modify executory provisions it will retain that power although the agreement of the parties and the decree of the court provide that the original allowance shall never be changed * * *." 172 Or at 49.

*See also, Picker v. Vollenhover,* 206 Or 45, 70-73, 290 P2d 789 (1955). It follows that the authority to modify in this case is not limited by the language of paragraph XI.

(3) The provisions for the payment of household and automobile expenses and a monthly sum are in the nature of alimony.

The agreement in this case provided:

1. The wife would receive a house and the husband would pay off the mortgage on it.

2. So long as the wife lived in the house the husband

would pay all maintenance expenses plus insurance, taxes and utilities.

3. So long as the wife needed it the husband would provide the wife with the use of an automobile which he was obligated to maintain.

4. If the wife became unemployed by reason of illness or injury, the husband would pay her $350 per month.

As the majority points out, in so far as the provisions of a decree constitute a division of property, such provisions are forever binding and are not subject to modification. The transfer of the house, with the provision that the husband should satisfy the mortgage, was clearly division of property and not subject to modification.

The requirements that the husband pay for the maintenance of the house and an automobile were not labeled in the agreement or the decree, but I am satisfied that under existing law those payments constituted support payments as distinguished from division of property. *See, Prime v. Prime,* supra; *Warrington v. Warrington,* supra; *Warner v. Warner,* supra; *Phy v. Phy,* supra. The monthly sum to be paid in the event of illness was labeled "alimony." As support payments they are subject to modification based on changed circumstances.

(4) The husband has proved a substantial change of circumstances.

At the hearing below, the husband established to my satisfaction the following changes in circumstances since the date the parties were divorced:

1. The wife has remarried. Her present husband

is employed and resides with her in the home which her former husband is required, by the terms of the initial decree, to maintain. As far as the record reflects, the wife's present husband is able to support her.

2. At the time of the divorce the wife was ill; her condition had been diagnosed as diabetes. Since then it has been learned that diagnosis was in error. The wife now apparently enjoys excellent health.

3. The husband has changed his occupation and domicile. His income is less in his new occupation and the cost of living is more in his new domicile.

There is authority for the proposition that the wife's remarriage, standing alone, would be a sufficient change in circumstances to warrant modification. In *Nelson v. Nelson,* supra, the court stated:

> "The remarriage of a divorced wife does not *ipso facto* cancel the obligation to pay the installments of alimony awarded her by decree * * *. Nevertheless, it is such a change in the situation of the parties as to furnish the court a cogent reason for modifying the decree * * *. It would not be good public policy to compel a divorced husband to support his former wife after she has remarried, *except under extraordinary conditions which she should be required to prove * * *.*" 181 Or at 499-500. (Emphasis supplied.)

I find nothing in the present record that amounts to proof of extraordinary circumstances by the wife.

Rather than rest on that basis, however, I would simply hold that the wife's remarriage combined with the wife's improved health combined with the husband's worsened economic situation adds up to a compelling presentation of a change of circumstances. The hus-

band is still obligated to pay off the mortgage on the wife's home, but in light of the present circumstances, continuing his obligations beyond the mortgage payments seems unwarranted to me.

For the foregoing reasons I respectfully dissent.