Argued and submitted October 26, 1984, reversed on appeal, affirmed on cross-appeal, April 17, reconsideration denied June 7, petition for review allowed July 23, 1985

(299 Or 522)

In the Matter of the Marriage of

POPE,

*Appellant - Cross-Respondent,*

*and*

POPE,

*Respondent - Cross-Appellant.*

(D7904-62977; CA A30698)

698 P2d 518

Jacob Tanzer, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Ball, Janik & Novack, Portland.

William J. Howe, III, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Howe & Harris, Portland.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

### BUTTLER, P. J.

Wife appeals an order granting husband's motion to modify the 1980 decree dissolving the parties' 22-year marriage by terminating husband's obligation to make payments according to the parties' property settlement agreement, which was incorporated into the dissolution decree. The parties agreed in paragraph 3.1 of the agreement, denominated support, that husband would pay wife $42,000 per year (plus a 10 percent annual cost of living increase provided for elsewhere in the agreement) from July 1, 1980, through June 30, 1990, unless either party died or wife remarried; if wife remarried before July 1, 1985, the payments were to continue until that date; if she remarried after July 1, 1985, the payments were to terminate on the date of her marriage. The trial court concluded that those payments constituted spousal support rather than part of the negotiated property settlement and that wife's remarriage to a wealthy man in 1982 was a sufficient change in circumstances to warrant their termination.

Husband cross-appeals, assigning as error the trial court's denial of his motion to terminate his obligation to maintain life insurance on his life for the benefit of wife under paragraph 9.1 of the agreement. The trial court concluded that that obligation was not subject to modification, because, unlike the payments required by paragraph 3.1, it constituted part of the property settlement.

The two paragraphs of the agreement and decree with which we are concerned provide:

"3.1 Husband shall pay Wife the sum of $42,000 per year commencing July 1, 1980 and each year thereafter through June 30, 1990, or until as otherwise terminated as provided herein, said sum to be paid in advance in semi-annual equal payments. The payments to be made to Wife pursuant to this paragraph shall terminate only in the event of the death of Husband or Wife, or on July 1, 1985 if Wife remarries prior thereto, or upon the remarriage of Wife after July 1, 1985, whichever shall first occur.

"* * * * *

"9.1 For a period of ten years following execution of this agreement, or until September 30, 1985 if Wife remarries prior thereto, or upon remarriage of Wife after September 30, 1985,

whichever shall first occur, Husband shall, at his sole cost and expense, maintain and provide in full force and effect life insurance naming and providing for payment to Wife upon death of Husband the sum of $500,000. Husband shall deliver to Wife a copy of the insurance policy maintained by Husband pursuant to the provisions of this paragraph and provide upon request evidence of payment of the premiums therefor. In the event Husband shall fail to pay the premiums or provide such insurance, Wife may, but shall not be obligated to, pay such premiums or obtain such insurance, and Husband shall be liable to Wife for the cost thereof. In the event of termination of the obligation of Husband under this subparagraph, any policy of life insurance in existence pursuant to the provisions hereof shall become the sole property of Wife to be maintained at her expense. Husband agrees to co-operate and do whatever may reasonably be required to maintain any life insurance obtained under this subparagraph or to obtain a lower premium therefor." '

We consider first husband's cross-appeal. Emphasizing the undisputed interrelationship between the two paragraphs, husband contends that, if the trial court was correct in concluding that paragraph 3.1 provided for support and was modifiable, it must have erred in concluding that paragraph 9.1 was part of the property settlement and, thus, not subject to modification. It is clear that paragraph 9.1 was intended to be, at least in part, a mechanism to protect wife if husband died before his obligations under paragraph 3.1 terminated. To that extent husband's argument is persuasive.

However, paragraph 9.1 contains essential attributes of a property settlement. First, the benefit provided ($500,000) is substantially greater than the sum of the payments potentially payable under paragraph 3.1 ($382,543). Second, paragraph 9.1 does not provide for a reduction of the original life insurance benefit as the 10 year term progresses. Finally, and most significantly, that paragraph provides:

"In the event of termination of the obligation of Husband under this subparagraph, any policy of life insurance in existence pursuant to the provisions hereof shall become the sole property of Wife to be maintained at her expense."

Accordingly, we agree with the trial court in finding that paragraph 9.1 is a part of the property settlement and is not subject to modification.

In her appeal, wife advances three lines of argument: (1) the payments provided for in paragraph 3.1 represent a part of the property settlement and not spousal support; (2) even if the payments do represent spousal support, public policy dictates that the terms of an integrated property settlement agreement, negotiated at arms length with the aid of competent counsel, which are deemed fair when accepted and incorporated in the decree, are not subject to modification; and (3) even if the payments do represent spousal support, wife's remarriage, which was an occurrence that was anticipated and was specifically provided for in the payment terms, cannot form the basis for modifying the obligation.

 Because we agree with wife's third argument, we address it first. Although courts have the authority to set aside, alter or modify any obligation deemed to be support when there has been a substantial change of circumstances, ORS 107.135(1)(a) and (2), a circumstance that was within the contemplation of the parties at the time of the original decree is not by itself sufficient to justify modification. *See, e.g., Harden and Harden,* 67 Or App 687, 690, 679 P2d 348 (1984); *Hellweg v. Hellweg,* 30 Or App 995, 997, 568 P2d 710 (1977); *Pratt and Pratt,* 29 Or App 115, 118, 562 P2d 984 (1977). As a general rule, the remarriage of the dependent spouse does not *ipso facto* terminate the obligation to pay support provided by the decree, *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977),[1] and a general provision in the decree that support will not terminate if the dependent spouse remarries does not necessarily preclude modification if that spouse remarries. Furthermore, if there is no agreement, and the decree is silent, remarriage of the dependent spouse may be a sufficient change of circumstances even though it was expected to occur at some time in the future. *Wilson and Wilson,* 62 Or App 201, 660 P2d 188 (1983).

 During the time when the parties were negotiating the elaborate agreement winding up their marital estate after 22 years of marriage, wife was dating the man whom she later married. Not only does the record support the conclusion that

---

[1] *But see* 280 Or at 356 n 12a, in which the court stated that the rule does not apply to a case in which there is a valid property settlement providing for automatic termination.

the parties contemplated wife's remarriage during those negotiations, it is clear that the effect of her remarriage was anticipated and covered by paragraph 3.1 of the agreement: Payments were to continue for five years, notwithstanding wife's remarriage during that period. If she remarried after five years, any payments required by that provision would terminate. It is reasonable to infer that it was anticipated that if wife married within five years, it would be to the man she was then dating, and whom husband knew to be wealthy. Notwithstanding that knowledge and expectation, husband specifically agreed to make the payments, however characterized, required by paragraph 3.1.

■ Husband argues that this case should be resolved according to the principle that when the dependent spouse remarries, support will terminate unless the new spouse is unable to provide support. *See, e.g., Esler and Esler,* 66 Or App 452, 456, 673 P2d 1386 (1984); *Wilson and Wilson, supra,* 62 Or App at 204. This principle, however, is inapplicable when the parties provide for the effect of the remarriage in their settlement agreement.

Husband also contends that our conclusion is precluded by the case of *Garnett v. Garnett,* 270 Or 102, 526 P2d 549 (1974), where the parties' property settlement agreement provided that the wife's remarriage would not affect any of the husband's support obligations. When the agreement was executed, the parties believed that the wife had diabetes, which would severely impair her future earning capacity. Subsequently, when the wife remarried and it was determined that she did not suffer from diabetes, the husband petitioned the court for modification of his support obligations. The trial court modified part of the husband's obligations, apparently on the basis of the wife's remarriage. *Garnett v. Garnett,* 17 Or App 307, 312, 521 P2d 1054 (1974).

This court reversed, reasoning that we "should not save a person from the bargain he makes under fair bargaining conditions, after he finds the consideration unattractive." *Garnett v. Garnett, supra,* 17 Or App at 317. On review, the Supreme Court reversed and reinstated the trial court's order. Citing *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943), the court indicated its concern that our decision may have cast

doubt on a court's authority to modify any contractual obligation deemed to be support. It reaffirmed that authority and held that the trial court was correct in finding that circumstances had changed sufficiently to warrant modification of the decree. However, the court did not hold that the remarriage constituted the necessary changed circumstance. Rather, the court relied on the post-decree determination that the wife was not diabetic:

> "It is our conclusion from the evidence that the probability is that the payments were intended by way of support because of the supposed diabetic condition of the wife." *Garnett v. Garnett, supra,* 270 Or at 107.

■ Although it is clear that the terms of an incorporated property settlement agreement cannot deprive a court of its authority under ORS 107.135(1)(a) and (2) to set aside, alter or modify any obligation deemed to be support, *Garnett v. Garnett, supra; Prime v. Prime, supra,* that authority must be balanced against the strong public policy of enforcing such agreements and provisions, unless the provision in question is imposed by the court. *McDonnal and McDonnal,* 293 Or 772, 652 P2d 1247 (1982). In that case, the court said:

> "Additional considerations bear upon our affirmance of a policy of enforceability of agreements between divorcing parties. In cases where a support agreement has been incorporated into the decree in lieu of an evidentiary hearing and factual determination by the court the agreement itself is the court's only measure of the equities between the parties. The parties' own resolution of their dispute should be accorded great weight. In all cases of dissolution the court exercises full equity powers. ORS 107.405. Where parties have foregone their opportunity to litigate disputes and have chosen instead to enter into an agreement their reliance on the agreement can be presumed. Inequity may result if this court adopts a policy of less than full enforcement of mutually agreed upon property and support agreements." 293 Or at 779.

Notwithstanding our authority to modify the decree, we perceive no public policy reason for doing so. The parties bargained long and hard to reach a settlement, and they did so in a manner that specifically covers the circumstance on which modification is sought. We believe that policy considerations support our conclusion to enforce the agreement as written.

Reversed on appeal; affirmed on cross-appeal. Costs to wife.