# PORTER,
*Respondent,*
*and*

# PORTER,
*Appellant.*

## (D8703-61716; CA A49634)
786 P2d 740

John W. Lundeen, Lake Oswego, argued the cause and filed the brief for appellant.

No appearance for respondent.

BUTTLER, J.

Edmonds, J., dissenting.

**BUTTLER, J.**

Husband appeals from an order modifying a dissolution judgment to award wife $4,800 in spousal support, payable at $300 a month. On *de novo* review, we affirm.

After 20 years of marriage, the parties were divorced in 1971. They executed a property settlement agreement, which was incorporated into the judgment. Under the agreement, husband was granted custody of the eldest child, wife was granted custody of the two younger girls and was awarded $500 per month child support until those children reached majority. Wife also received the family residence free of any mortgage, and released any interest she might have had in husband's retail ski business. With respect to spousal support, the parties agreed:

> "That Husband shall pay to Wife the sum of $1.00 per month as and for permanent alimony and it is the specific intention of the parties that alimony for wife be subject to further order of the Court and may be increased provided a proper showing of need based upon health or financial circumstances be made by wife upon affidavit and motion to the Court * * *."

Although husband's child support obligation ended in December, 1977, he continued to pay wife $500 per month. In 1979, the parties stipulated that sums paid to wife after January 1, 1978 were paid as "alimony." Husband continued to pay wife $500 until October, 1986.

Wife then filed a motion asking the court to declare that the 1979 stipulation imposed a duty on husband to pay $500 per month or, alternatively, to modify the judgment to so provide. The trial court concluded that, under the property settlement agreement, it retained jurisdiction to modify spousal support, and it awarded wife a lump sum of $4,800, payable at $300 per month, as "rehabilitative alimony."

In his first assignment of error, husband challenges the trial court's jurisdiction to modify spousal support. It is true, as the dissent points out, that a trial court, in fixing spousal support, must base the award on conditions cognizable at the time of the award. The minimal spousal support involved here, however, was not *imposed* by the court, but was part of a negotiated settlement agreement. Presumably, wife, in accepting such minimal support for the express purpose of

keeping the support obligation open, gave up something else in the negotiations; if she had not obtained that agreement from husband, she might have received some other benefit as part of the settlement.[1] After a 20-year marriage, a wife whose earning capacity is substantially less than that of her husband, as here, may reasonably anticipate significant and perhaps permanent spousal support. *See Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977); *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, *rev den* (1974). Courts should enforce, not disturb, negotiated settlement agreements, unless there is an overriding public policy reason for not doing so.

*Ward v. Ward,* 41 Or App 447, 599 P2d 1150, *rev den* 288 Or 141 (1979), on which the dissent relies, does not preclude our enforcing a negotiated settlement agreement. In *Ward,* the trial court, in a modification proceeding, had reduced husband's support obligation to a nominal amount in order to keep it open. That was not a negotiated provision in a settlement agreement. The same is true in *Ash and Ash,* 61 Or App 595, 658 P2d 540 (1983), and *Koch and Koch,* 58 Or App 252, 648 P2d 406 (1982).

We see no meaningful distinction between this case and *Pope and Pope,* 73 Or App 242, 698 P2d 518 (1985), *aff'd* 301 Or 42, 718 P2d 735 (1986), in which a negotiated property settlement agreement provided for payments to wife of $42,000 per year commencing July 1, 1980, through June 30, 1990, and provided that payments would terminate on July 1, 1985, if wife remarried prior thereto, or upon the remarriage of wife after July 1, 1985, whichever first occurred. Wife remarried a very wealthy man in 1982, whereupon husband moved to modify the support provision that was incorporated in the judgment of dissolution. The trial court terminated the support payments.

On appeal, we reversed. We recognized the general principle that remarriage may be a sufficient change of circumstances to justify modification or termination of spousal support. We held, however, that that rule was inapplicable

---

[1] As part of the property settlement, wife released her interest in husband's retail ski business. In 1971, the year in which the parties were divorced, that business provided husband with over $60,000 in taxable income.

when the parties specifically provided for the effect of the remarriage in a negotiated settlement agreement. The Supreme Court affirmed.

There is no question that if, in *Pope and Pope, supra,* the parties had not specifically agreed as they did in the settlement agreement, husband would have been entitled to termination of support, because wife was substantially better off financially than she had been with husband, although she was very well off with him, too. The same thing is true here: The parties expressly agreed that, if wife's health or financial circumstances required more support from husband in the future, he would pay it on a proper showing.

Husband argues that, even if the agreement is enforceable, the trial court erred in finding that wife's health or financial circumstances required more support. Wife suffers from undiagnosed, transitory "spells." The episodes might last anywhere from a day to several months. An attack begins with a severe headache, and then her whole body convulses. Medication can control the severity of the attack, but it does not prevent an attack from occurring. Although the doctors do not agree as to the origin of those "spells,"[2] they agree that the symptoms are real and can be disabling when they occur. They began when wife was 37 years old and was still married to husband. Wife testified, without contradiction, that the spells are getting worse as she gets older. She was 60 years old at the time of the hearing. In addition, a clinical psychologist diagnosed wife as suffering from a form of low-grade, long-term depression. Wife denies that she has emotional problems, and appears to be resistant to undergoing therapy. We agree with the trial court's conclusion that the record is sufficient to show a material change in wife's health.

In his next assignment, husband argues that, in any event, the facts do not justify awarding wife $300 a month for 16 months. He does not contend that he is unable to pay that

---

[2] A psychiatrist retained to evaluate wife's psychological and physiological condition, was unable to diagnose her problem. He did state that she had *bona fide* physical symptoms that were not due to a psychiatric abnormality. On the other hand, a clinical psychologist diagnosed the condition as an undifferentiated somatoform disorder. In lay terms, that means that, although wife honestly believes that she has a physical problem and actually experiences those symptoms, there is no organic basis for the illness.

amount. He argues that wife does not need it, because she earns approximately $108 a week, which meets her needs, unless she needs professional help for her condition, which she resists. Although the record shows that wife has resisted professional help, it also shows that she needs it. The support would make it financially possible for her, whereas it is not with her own earnings.

■ Husband also contends that the trial court erred when it found that wife had made sufficient efforts to make herself financially self-sufficient and, therefore, the court should terminate spousal support under ORS 107.407. Wife was 43 years old when the parties divorced in 1971. She has a high school education. After the divorce, she attended a trade school to learn office and clerical skills, paid for by husband. Between 1973 and 1978, she held various positions as a medical receptionist, a secretary/bookkeeper, a door-to-door salesperson and a home-health aide. Some jobs were part-time, most did not last for more than nine months and none paid more than $5.00 an hour. A ruptured disc forced her to quit work and required surgery in November, 1978. The same disc re-ruptured, requiring additional surgery in 1979. Although she was released to return to work in March, 1980, she made no effort to obtain employment until husband terminated his payments in October, 1986.[3] She is currently employed, part-time, as a home-health aide, making $5.00 an hour. Her hours vary, depending on her employer's needs, but she generally works 30 hours per week, taking home approximately $108 per week.

■ Under ORS 107.407 the court may terminate support if wife has not made *reasonable* efforts to become financially self-supporting and independent of the support. Under ORS 107.412(2), we determine the reasonableness of wife's efforts in light of her age, work experience, education, earning capacity and her physical and mental health history. *Alley and Alley,* 98 Or App 450, 455, 779 P2d 210 (1989).

It is apparent that wife has attempted to become self-

---

[3] Wife testified that she did not work, because she had "these two back surgeries, and I had this problem [the spells] that comes and goes. I was getting my check every month, and nobody was pressuring me. I figured it was my own business."

sufficient, although without much success. The record suggests, at least, that her health problems have interfered with her efforts. We agree with the trial court that it is not appropriate to terminate all support at this time.

Finally, husband argues that the trial court awarded wife excessive attorney fees and costs in the amount of $7,006.72. An award of attorney fees under ORS 107.135(6) is discretionary. We review only for abuse of discretion. *Moreau and Moreau,* 89 Or App 563, 749 P2d 1232 (1988). The trial court acted within the range of its discretion.

Affirmed.

**EDMONDS, J.,** dissenting.

The majority would allow the parties to do by agreement what a court could not do on its own. It thereby would permit the parties to defeat what the legislature intended. The 1971 judgment for token support was the result of an attempt by the parties to circumvent the limits on the authority granted trial courts by the legislature.

In *Johnson v. Johnson,* 245 Or 10, 14, 419 P2d 28 (1966), the court said:

> "To adopt the suggestions of counsel for plaintiff by making a minimal or token award of alimony for the sole purpose of reserving to the court the power to modify would result in an indirect, if not direct circumvention of the provisions of ORS 107.130(a)."[1]

In *Ward v. Ward,* 41 Or App 447, 453, 599 P2d 1150, *rev den* 288 Or 141 (1979), we said:

> "The retention of a token alimony obligation in order to continue the liability for alimony in the event that the recipient becomes needy in the future is factually speculative and procedurally fictitious."

*See also Ash and Ash,* 61 Or App 595, 598, 658 P2d 540 (1983); *Koch and Koch,* 58 Or App 252, 648 P2d 406 (1982); *McGee v. McGee,* 48 Or App 163, 616 P2d 555 (1980). The teaching of

---

[1] ORS 107.130(a) was repealed in 1971 and replaced by ORS 107.135. However, the policy of requiring that a modification of support be based on existing conditions continues.

those cases is that an award of support must be based on *conditions existing at the time of the award.*

The majority relies on *Pope and Pope,* 73 Or App 242, 698 P2d 518, *aff'd* 301 Or 42, 718 P2d 735 (1986), which holds that the general principle that support will terminate when the dependent spouse remarries, unless the new spouse is unable to provide support, is inapplicable if the parties had specifically negotiated a property settlement. We said:

> "Notwithstanding our authority to modify the decree, *we perceive no public policy reason for doing so. * * * We* believe that policy considerations support our conclusion to enforce the agreement as written." *Pope and Pope, supra,* 73 Or App at 248. (Emphasis supplied.)

*Pope* finds its rationale in *McDonnal and McDonnal,* 293 Or 772, 652 P2d 1247 (1982), where the court enforced a property settlement agreement that provided that an award of spousal support for a fixed period of time could be reviewed without the requirement of a showing of changed circumstances. In *McDonnal,* the court said:

> "We do not suggest that a property settlement providing for spousal support may go so far as to preclude the court's statutory power to modify support even where changed circumstances exist. * * * However, *short of conflict with statutory powers* of the court, we recognize the court's responsibility to discover and give effect to the intent of the parties as reflected in the incorporated settlement agreement." 293 Or at 779. (Emphasis supplied.)

Both *Pope* and *McDonnal* recognize that an agreement of the parties will be deemed subordinate to public policy decisions by the legislature if a conflict between the terms of the agreement and the policy occurs. The relief sought by husband here is governed solely by ORS 107.135. *See Grayson v. Grayson,* 222 Or 506, 513, 352 P2d 738 (1960). The majority acknowledges that it is the express policy of the legislature in promulgating ORS ch 107 that an award of spousal support be based on conditions existing at the time of the award. (*See* 100 Or App 403.) Yet, the majority permits wife to use a token award of support made contrary to that policy as a foundation for her motion to modify. By doing that, the majority establishes a dangerous precedent that will provide a springboard for all sorts of agreements to be incorporated into dissolution

judgments and which will exceed the grant of authority vested in the trial court by the legislature. The result is an elevation of negotiated property settlements above the will of the legislature in a statutory proceeding.

I dissent.

Joseph, Chief Judge, and Richardson and Graber, Judges, join in this dissent.