Argued and submitted February 12, affirmed June 11, petition for review denied October 2, 2014 (356 Or 397)

In the Matter of the Marriage of

W. Douglas HALL,
*Petitioner-Appellant,*
*and*

Stephanie BUTH-HALL,
*Respondent-Respondent.*

Clackamas County Circuit Court
DR0005660; A151910

328 P3d 808

W. Michael Gillette argued the cause for appellant. With him on the briefs were Leora Coleman-Fire and Schwabe, Williamson & Wyatt, P.C.

John Moore argued the cause for respondent. With him on the brief were Jonathan H. Johnson and Moore Law Group, P.C.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Husband appeals a judgment denying his motion to modify a 2001 dissolution judgment by terminating the indefinite maintenance spousal support obligation. He argues that the trial court erred in determining that husband failed to prove that wife's efforts to become self-supporting in the 10 years following dissolution were not reasonable as required under ORS 107.407 and ORS 107.412(2). Assuming that husband prevails on that assignment, he also assigns error to the trial court's award of $40,000 in attorney fees to wife. We conclude that the trial court did not err in determining that husband failed to prove that wife's efforts to become financially self-supporting were unreasonable, and therefore affirm.

The parties do not ask that we exercise our discretion under ORS 19.415(3) to review the record *de novo*. Because the sole issue on appeal is a question of law, we accept the trial court's express and implicit factual findings that are supported by sufficient evidence in the record and review the trial court's legal conclusions for errors of law. *Morton and Morton*, 252 Or App 525, 527, 287 P3d 1227 (2012).

The facts are largely undisputed. The parties were divorced in 2001 after nearly 22 years of marriage. During the marriage, wife was the primary caretaker of the parties' two children and worked part-time as a "fragrance model," earning approximately $1,126 per month at the time of dissolution.[1] Husband earned approximately $17,895 per month at the time of dissolution as the president of an industrial manufacturing company. The parties lived in a large home on the Clackamas River, which they sold after the 2001 divorce for $975,000. As part of the dissolution proceedings, the parties entered into a Marital Settlement Agreement. As part of that agreement, the parties stipulated that husband would pay wife $2,000 per month in transitional spousal support for 36 months and $3,000 per month in indefinite maintenance spousal support. Initially, the parties

---

[1] A fragrance model stands in front of the cosmetics counter at a department store promoting the perfumes available for purchase.

stipulated to joint custody of their two children, and wife received $821 per month in child support payments, but those payments ceased seven months later when the parties agreed that husband would have sole legal and physical custody of the parties' only minor child, who was then 11 years old. At the time of dissolution, wife was 43 years of age, in good health, and had a high school education with one year of college education.

After dissolution, wife continued to work as a part-time fragrance model for multiple fragrance companies. Between 2001 and 2008, she was earning approximately $26,000 per year, but her earnings dropped drastically beginning in 2008 due to a downturn in the economy. Between 2008 and 2011, wife earned between $7,000 and $17,000 per year as a fragrance model, working an average of seven to 17 hours per week for approximately $21 per hour, and received unemployment compensation in the seasons when fragrance modeling work was routinely unavailable.[2]

In addition to continuing her work as a fragrance model, wife pursued a real estate business. Drawing on her experience of selling real property, wife believed that real estate investments would provide her with a monthly income and allow her to build equity. Wife's real estate business included buying and selling a home for profit; buying investment properties, which she improved, rented out, managed, and maintained; and working part-time at an apartment duplex screening tenants, preparing rental agreements, and providing maintenance and repair services at a rate of $20 per hour. Wife was working approximately 20 to 30 hours per week managing the rental properties, and she put any income from the properties back into her rentals. Between her fragrance modeling and real estate work, wife regularly worked 40 to 50 hours per week.

---

[2] According to husband, wife's tax returns showed that she worked an average of 17.15 hours per week in 2008, 6.99 hours per week in 2009, 14.1 hours per week in 2010, and 12.82 hours per week in 2011. Her approximate earnings from fragrance modeling were $17,000 in 2008, $7,000 in 2009, $14,000 in 2010, and $12,000 in 2011. Unemployment compensation added roughly $8,000 in 2008, $12,000 in 2009, $11,000 in 2010, and $7,000 in 2011. Adding wife's wages and unemployment compensation for those years, her income ranged from approximately $19,000 to $25,000.

Wife purchased her first house in 2001, the same year as the dissolution, the "Rosemont" house, and she resided in the Rosemont house until 2005. In 2003, she purchased another house as an investment property, made improvements, and sold it in 2004 for a profit of $12,812. In 2004 or 2005, wife purchased a third house, which she improved and began renting for $900 per month.[3] In 2005, she purchased a small houseboat where she could live more modestly, and started renting out the Rosemont house.

In 2007 or 2008, wife lost her fragrance modeling job with Yves Saint Laurent and, according to her testimony, she decided to "reinvent herself" as a real estate professional. She used money from the divorce settlement and borrowed $75,000 to purchase another rental house. In 2009, wife registered with the Internal Revenue Service as a real estate professional and continued to look for investment properties to purchase. In 2011, she attempted to purchase a fourth rental property, but the purchase fell through. She also tried to purchase a mobile home but lacked the funds due to litigation expenses relating to the dissolution. At the time of the hearing to terminate indefinite spousal support, wife owned three rental properties, with mortgages, and the houseboat where she lived, which she owned outright.

In 2012, husband sought termination of spousal support, arguing that wife had not made a reasonable effort to become self-supporting in the 10-plus years since their divorce, as required under ORS 107.407. At the hearing, husband offered expert testimony from Hincks, a vocational counselor, on wife's income potential and employability based on her work experience, education, skills, and length of time away from the labor market. Hincks testified that wife's 30 years of experience as a fragrance model with virtually all major lines of fragrance made her very marketable as a cosmetic sales advisor, supervisor, or account manager at Nordstrom or Macy's, offering salaries from $18,340 to $41,600 plus commissions and benefits, which was substantially more than wife's monthly and annual income for fragrance modeling between 2008 and 2010. Hincks acknowledged

---

[3] Wife's testimony was inconsistent as to whether she purchased that property in 2004 or 2005.

that wife had been pursuing two career tracks simultaneously—fragrance modeling and real estate investing—and agreed that following two career tracks to maximize the work week was not unreasonable. Hincks also recognized that wife's real estate investment track could benefit her in several ways, such as generating income on an annual basis and increasing her net worth as her rental properties increased in value. However, he also asserted that it would have been reasonable for wife to work full time at Nordstrom while continuing her real estate investment efforts.

Husband also offered expert testimony from a certified public accountant, Foat, who considered whether wife's real estate investment business was viable as a near-term source of income and what level or effort of work was necessary to run such a business.[4] Foat determined that wife's property investments between 2008 and 2011 were not a viable near-term source of income, because they had lost an average of $20,735 per year when accounting for depreciation and amortization on noncash items. Foat calculated that, at a property manager's baseline hourly wage of $22, wife could work no more than 150 hours a year managing and maintaining her three rental properties to break even with incoming gross rents. He concluded that it did not make economic sense for wife to work more than 50 hours a week between her work as a fragrance model and as a real estate investor when the financial loss from the real estate was so great that it negated her total income as a fragrance model.[5] Foat acknowledged that he did not perform an economic income analysis or appraise wife's properties or business, and that wife could pursue investment properties for reasons other than to generate income, such as a long-term strategy to pay down loans on the properties, offset taxes on other scheduled income through depreciation and losses on

[4] Foat explained that "near-term source of income" is a term of art meaning the cash flow available for expenses during the period before mortgages are paid or costs are reduced.

[5] According to Foat, passive property investors commonly keep their day jobs, borrow money to purchase investment properties, rely on the rental income to pay the mortgage, and wait until the debt is paid to begin relying on that passive income for retirement. However, that strategy presumes that the investor can afford the shorter-term investment costs.

the properties, and build property value in the long term.[6] However, in Foat's view, that strategy did not make sense for wife when she could not afford the shorter-term investment costs and earn a living wage from her efforts in the near future.

Husband argued that wife had failed to make reasonable efforts toward self-sufficiency because she had failed to use the $72,000 in transitional spousal support to pursue further studies that would have improved her employability, and she had made no effort to pursue available job opportunities that would have paid at least $23,000 per year at an entry level. He asserted that wife's real estate business was not a reasonable effort to become self-supporting, because the properties could not be sold in the current market for a profit, and it was financially unnecessary for wife to work on the properties for more than 10 hours per week when she received the same amount of rent from her tenants regardless of any additional work. According to husband, wife's efforts would have been reasonable under ORS 107.407 had she made *bona fide* efforts to look for work when she was not working as a fragrance model, even if the only full-time work she could have found paid minimum wage. To the contrary, he argued, wife's good faith belief in her strategy of working as a real estate investor was insufficient to demonstrate that she was making a reasonable effort toward financial independence when it did very little to produce immediate income. In husband's view, the mere fact that wife was not making a penny more than she did 10 years ago demonstrated that her efforts were unreasonable and was sufficient reason to terminate spousal support.

Wife responded that husband's test for reasonable efforts improperly rested on a single parameter, her annual income, when, in her view, moving to economic self-sufficiency requires more than just a paycheck at the end of the month. She cited two cases in which this court has concluded that terminating spousal support under ORS 107.407 was proper, and noted that we measured reasonable

<hr/>

[6] Foat noted that housing prices were high in 2008, so the property value on properties purchased at that time could decrease in value, but the rental market was strengthened because of foreclosures in recent years.

effort by all things associated with economic prosperity, including income, net worth, cash flow, and tax benefits. *See Hanlin v. Hanlin*, 42 Or App 165, 600 P2d 454, *rev den*, 288 Or 81 (1979) (considering that the wife also received child support payments and would have had an opportunity to provide herself with a means of earning an adequate living by the time those payments were scheduled to terminate); *McGee v. McGee*, 48 Or App 163, 616 P2d 555 (1980) (considering that the wife did not rely on minimal spousal support award in light of income from the sale of marital property at the time of dissolution and her share of contract payments from the sale of a lumber mill, as well as her unencumbered ownership of a house and unimproved lots). Wife asserted that her real estate strategy was designed to increase her net worth through a combination of cash flow from rental income, wages as a contractor/handyman, and the growth of equity in her rental properties. She argued that, by simplifying her lifestyle and combining fragrance modeling with real estate investing, she had doubled her net worth over the prior 10 years. Finally, wife presented evidence that she was earning much more money as a fragrance model than she could earn working behind the cosmetics counter, even considering any commissions and fringe benefits.

The trial court determined that husband had not demonstrated wife's strides toward self-sufficiency—"[t]he combination of her fragrance modeling business (both the W-2 and 1099 sources of income), the unemployment compensation which appears to be a regular part of that business (at least for the past four years), and her efforts to purchase, rehabilitate, rent and manage real properties"—were not reasonable. The court explained: "This may not be the course of action that I, or most others, would choose to pursue, but the Court cannot find the course of action chosen by [wife] to be unreasonable in an effort to create long term self-sufficiency for herself." The court entered two supplemental judgments, one denying husband's petition and the other awarding wife $40,000 in attorney fees and costs.

On appeal, husband renews the arguments made at the hearing. He argues that the trial court erred in failing to terminate his maintenance spousal support obligation when wife made no effort to become self-supporting over

the course of 10 years. He maintains that wife failed to use reasonable efforts to become financially self-sustaining and independent because (1) she continued to rely on work as a fragrance model and periodic unemployment compensation for income, (2) she failed to utilize the $72,000 award of transitional support for further education or training, and (3) her decision to pursue a real estate career was fiscally unsustainable. Husband argues further that it was unreasonable that wife failed to seek a position working behind the cosmetics counter, even if it paid a lower hourly wage than fragrance modeling, because it would carry fringe benefits that virtually eliminate the disparity in pay, including health insurance and a retirement plan. Husband contends that wife's "sole 'effort' [to become self-sufficient] has been her lately-conceived, embryonic and unconventional 'real estate' enterprise which, if it is ever to be profitable, has shown no signs of it yet." Husband argues that, based on the testimony of his expert witness, if wife had "undertaken *any* effort—further schooling, training, job searches, or simple openness to change," she "would likely find herself in a much improved financial position today." (Emphasis in original.)

Wife responds that there is no talismanic formula or set of facts that quantify reasonableness. She contends that she had a "well-articulated and defined plan for moving toward economic self-sufficiency, which she is continuing at present, and which has short term and long term benefits." Wife describes the short-term benefits as income from rental houses, fragrance modeling, and property maintenance services. She describes the long-term benefits as increased equity in the investment properties that she purchased and, ultimately, additional rental income. Wife asserts that she has taken every opportunity to work as a fragrance model, and argues that it was reasonable to pursue fragrance modeling over lower-paying employment behind the cosmetics counter. Testimony by husband and his expert witnesses that she should have pursued a particular form of employment does not prove, in wife's estimation, that her efforts were unreasonable. Finally, wife contends that she was not required to use the transitional support for training and education when it is unnecessary to pursue her real estate occupation.

The sole question on appeal is whether the trial court erred in concluding that husband failed to establish that wife's efforts to become self-supporting in the 10 years following dissolution were not reasonable.[7] The parties agree that whether wife's efforts were reasonable is a question of law. We also agree and conclude that, although ORS 107.412(2) uses the term "finding," and factual findings underlie the reasonableness determination, whether a former spouse has made reasonable efforts under ORS 107.407 and ORS 107.412(2) is a legal question.[8]

ORS 107.407 provides, in relevant part:

"If an individual has paid an amount of money in installments for more than 10 years for the support of a former spouse under a judgment of annulment or dissolution of marriage that ordered such payment, and when the former spouse has not made a reasonable effort during that period of time to become financially self-supporting and independent of the support provided under the judgment, the individual paying the support may petition the court that issued the judgment to set aside so much of the judgment as may provide for the support of the former spouse."

ORS 107.407 does not require a supported spouse *to become* financially self-supporting within 10 years, only that the spouse makes "a reasonable effort during that period of time." *Porter and Porter*, 100 Or App 401, 406-07, 786 P2d 740, *rev den*, 310 Or 281 (1990) (affirming trial court's denial of motion to terminate spousal support when wife's health problems interfered with her efforts to become self-sufficient). Unless the supporting spouse satisfies the burden of persuasion to show that the supported spouse has

---

[7] Wife contends that two of husband's arguments on appeal were not preserved at trial. After reviewing the record, we conclude that those arguments were preserved.

[8] *See, e.g., McDowell v. Employment Dept.*, 348 Or 605, 614, 619, 236 P3d 722 (2010) (reviewing for errors of law the board's good cause determination whether a reasonable person in the employee's circumstances would believe that the circumstances were so grave that there was no reasonable alternative but to leave work); *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 744, 298 P3d 653 (2013) (reviewing as a matter of law whether the action of the Department of Human Services in a dependency proceeding constituted reasonable efforts); *Werth v. Employment Dept.*, 237 Or App 520, 528, 240 P3d 86 (2010) (reviewing as a matter of law the reasonableness of claimant's belief that further stalking would occur if she did not quit her job).

not made reasonable efforts to become financially self-supporting and independent of the support, the court may not set aside the support provision. *Alley and Alley*, 98 Or App 450, 455, 779 P2d 210 (1989). However, "if the court finds that the party receiving support has not made a reasonable effort during the previous 10 years to become financially self-supporting and independent of the support provided under the judgment, the court *shall* order that support terminated." ORS 107.412(2) (emphasis added).

ORS 107.412(2) sets forth the relevant considerations in determining whether the party receiving support made a reasonable effort:

"* * * In making its finding under this subsection, the court shall consider the following matters:

"(a) The age of the party receiving support;

"(b) The health, work experience and earning capacity of the party;

"(c) The ages, health and dependency conditions of the minor children of the party; and

"(d) Efforts made by the party during the previous 10 years to improve opportunities for gainful or improved employment including, but not limited to, attendance at any school, community college or university or attendance at courses of professional or technical training."

Thus, under that provision, we determine the reasonableness of a supported spouse's efforts in light of the individual's age, work experience, education, earning capacity, physical and mental health history, and efforts to improve opportunities for improved employment. *Alley*, 98 Or App at 455. We do not evaluate whether a supported spouse's efforts to become self-sufficient were reasonable by whether those efforts were successful. *Porter*, 100 Or App at 406-07.

We consider that, at the time of the modification hearing, wife was 55 years of age, healthy, and working 40 to 50 hours per week between two occupations. In her occupation as a fragrance model, she had 30 years of experience and could earn roughly $19,000 to $26,000 annually, counting unemployment insurance during the off-seasons. In her occupation as a real estate investor and rental property

manager, wife could generate taxable income and tax deductions, as well as build her long-term net worth through equity. Although wife had not sought additional training or education since the dissolution, husband did not present evidence that additional training or education was necessary for her chosen occupations. In sum, the trial court did not err in ruling that husband failed to meet his burden to demonstrate that wife's two-track career approach was not a reasonable effort to become self-sufficient.

Husband focuses too heavily on wife's financial shortcomings, and particularly on her annual income. We reject husband's assertion that ORS 107.412(2) requires a spouse who receives support to prioritize and maximize near-term financial success over alternative approaches to achieve self-sufficiency. The statute does not quantify how much effort nor qualify what kinds of efforts are reasonable. Based on our case law, barring special circumstances, a spouse receiving maintenance support cannot choose to do nothing and continue receiving support indefinitely. However, the reasonable efforts standard affords latitude and autonomy to the supported spouse to select a course that moves toward self-sufficiency.

Affirmed.