Argued and submitted April 28, vacated and remanded in part; otherwise affirmed
November 15, 2000

In the Matter of the Marriage of

Larry Allen HEINONEN,
*Respondent,*
*and*

Jo Anne HEINONEN,
*Appellant.*

(C90-2620DR; CA A103491)

14 P3d 96

Mark A. Johnson argued the cause for appellant. With him on the briefs was Bennett, Hartman & Reynolds.

Laura Graser argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

This case involves a dispute between parents over parenting time with the parties' children by father, the non-custodial parent. Mother appeals from a 1998 judgment modifying a 1995 stipulated judgment. The judgment on appeal continues to incorporate a stipulated agreement by the parties in which they authorized a designated person, rather than the court, to decide visitation disputes. In their agreement, the parties have labeled the designee as the "specialist." Mother argues on appeal that the trial court erred in granting father's request to continue the specialist's appointment, because a trial court has no authority to delegate its decision-making power in visitation and custody disputes. She also appeals the award of attorney fees and costs to father. We reverse.

Mother and father were married in 1978 and divorced in 1991. They have four children, two of whom are minors. Mother has custody of the minor children. The parties stipulated to a judgment of dissolution of their marriage in 1991. In 1995, they entered into a stipulated modification of that judgment. As part of the 1995 modification, the parties agreed to have the court appoint a person who would "serve these parents and their children in their effort to improve communications and foster cooperative approaches to parenting of their children." Their agreement was incorporated into the judgment. The relevant portions of the 1995 judgment state:

> "For the duration of the minority of the youngest of the four Heinonen children, or until the specialist for the parties, both parties, or the court feels it is no longer necessary, there shall be by this order of the court a specialist in place at all times to serve these parents and their children in their effort to improve communications and foster cooperative approaches to parenting of their children. The specialist shall practice solution-focused therapy and intervention. * * *

> "The appointment of the specialist and the administrative language regarding the authority and power of the specialist herein shall not be modifiable henceforth absent the showing of a substantial change of circumstances. * * *

"*Visitation conflicts, interpretation of clauses in this order and the application of such clauses to the parents and children, scheduling conflict not anticipated by this Order, adjustment to visitation, fair and balanced division of holiday and summer times, and a continuing balance of the allocation of school year time between the parents as is clearly intended by the language of the above drafted agreement, shall be within the province of the specialist to resolve.* Consideration shall be given first to the desires of the parties and children and facilitation of their negotiations, attempting to reach fair and reasonable agreements by caucusing, consulting, educating and in any other way appropriate working with the parents and children in this family towards those ends. *Furthermore, in the event such efforts do not lead to resolution of the issues, then the specialist shall have the authority vested in him or her herein specifically by the parents and by adoption of this order by the Court to resolve such differences and direct the parents' behavior on any specific related issue.*" (Emphasis added.)

The court appointed Reiter, a psychologist, as the initial specialist. Reiter attempted to resolve several disputes about visitation by negotiating between mother and father. He testified that he viewed his role as one of "attempting to get a family reintegration." After Reiter's appointment in 1995, father requested a visit with the children on Memorial Day, a holiday about which the visitation order was silent. Reiter intervened with mother on father's behalf and at his request. Reiter determined that the children should spend the holiday with father. Mother resisted, arguing that the specialist was exceeding the power given to him by the judgment. That was the first of many disputes about the powers of the specialist to interpret and effectuate the stipulated visitation agreement. Reiter resigned shortly thereafter, and the court appointed Vien, another psychologist, in October 1995.

Vien worked with the family until June 1996. He "attempted to mediate conflict between the parents." The parties continued to disagree about the authority of the specialist under the 1995 judgment. Mother believed that his role was only to resolve those disputes that arose under the agreement, and father believed that the specialist was empowered to

"divide the holidays equitably, to handle disputes, to work with the children on emotional issues, to assist with scheduling and disagreements about issues not covered by the [1995 judgment], to allow for fair and equal division of both school and federal holidays, and to eliminate the constant legal battles that had gone on before."

Vien wrote a letter to mother in November 1996, making some suggestions regarding changes to the visitation schedule. Mother's attorney responded, questioning Vien's authority to propose changes. Vien then resigned as specialist. In 1996, father filed a motion to modify the 1995 judgment, requesting changes to the visitation schedule. He alleged, "[Mother] has refused to acknowledge the role of the specialist to assign holidays. Drs. Reiter and Vien have not been allowed by respondent to assume the role for which they were appointed." In 1997, mother filed a motion requesting the court to terminate the specialist role, or, alternatively, to appoint a different specialist and clarify whether the specialist had the power "to modify a court order without the consent of both parties."

The court held hearings on both motions. Vien testified during the hearings that he would be willing to continue as the specialist if the court would clarify the judgment, give the specialist "some teeth," and authorize him to modify the existing visitation schedule. Mother testified that she was unwilling to have Vien serve as specialist again, both because she did not perceive him to be neutral and because she was not comfortable with him being "given the power to essentially be a judge and order you to do whatever he felt [you] needed to do." Father testified that "[o]ne of the primary reasons that I signed the [1995 modification stipulation] was that there was someone in place other than attorneys who would make these decisions in a fair, educated and rapid way."

The trial court issued a memorandum opinion and two letter opinions. In its memorandum opinion, the trial court said:

"I find that the sense of this order is to appoint a Specialist and vest him or her with power and authority to '...serve these parents and their children in their effort to

improve communication and foster cooperative approaches to parenting their children.' * * *

"In addition to the above mentioned Specialist's general role, the [1995 judgment] is replete with references to the Specialist's authority. It is clear that all parties and their counsel intended that this agreement and especially the employment of a Specialist, be a way to keep these parties out of court and to minimize resort to litigation.

"* * * * *

"* * * The agreement gave great power to a Specialist. This court specifically upholds, reaffirms and states that the agreement embodied in [the 1995 judgment] will continue as the governing document between these parties and their children. There will be a Specialist.

"* * * * *

"* * * The concept of a Specialist and the current Specialist, Dr. Vien will be continued and retained."

In addition, the trial court clarified in its letter opinions that it intended to re-adopt the language from the 1995 judgment regarding the specialist's power to "resolve [remaining visitation] differences and direct the parent's behavior on any specific related issue." The letter opinion also ruled that father would be awarded attorney fees because of mother's resistance to the specialist. Mother appeals from those portions of the 1998 judgment pertaining to the grant of authority to the specialist and to the award of attorney fees and costs to father.

■       The threshold issue is whether a trial court can lawfully delegate to a nonjudicial designee its authority under ORS 107.135.[1] The parties do not direct us to any statute that might authorize the court's action under ORS chapter 107, nor does our research reveal any. ORS 107.405 does provide that "[w]hen a court is sitting in proceedings for annulment or dissolution of a marriage, or for separation, it shall have

---

[1] ORS 107.135(1) provides, in part:

"The court may at any time after a decree of annulment or dissolution of marriage or of separation is granted * * *

"(a) Set aside, alter or modify so much of the decree as may provide * * * for the custody, parenting time, visitation * * * of the minor children[.]"

full equity powers." However, that grant of authority has uniformly been held by us and the Supreme Court to be circumscribed by ORS chapter 107. *Pope and Pope*, 301 Or 42, 45, 718 P2d 735 (1986). *See also Melkonian and Melkonian*, 55 Or App 586, 590, 639 P2d 662 (1982) ("We read ORS 107.405 as invoking only such equity powers as are appropriate for fashioning or modifying a decree under ORS chaper 107."); *Koch and Koch*, 58 Or App 252, 255, 648 P2d 406 (1982) ("Although a court in a dissolution proceeding has full equity powers, ORS 107.405, the exercise of such powers is limited by statute to certain subjects.").

Although ORS 107.765 contemplates mediation to resolve parenting time or visitation issues, it does not authorize the delegation of the authority of the trial court to the mediator to make a binding ruling against the wishes of one of the parties.[2] ORS 107.434 provides for an expedited procedure for resolving parenting time issues, and ORS 107.425 authorizes a court to use the services of a psychologist or mental health expert in undertaking the evaluation of parenting time requests, but neither of those procedures was what the trial court undertook. Also, ORS 107.174 provides for a procedure for the modification of orders for parenting time by stipulation subject to the discretion of the court to require a hearing on the issue. Because a trial court's authority regarding dissolution matters is wholly statutory, and no statute authorizes the provisions of the 1998 judgment that are the subject of this appeal, the trial court exceeded its authority when it made the rulings reflected by the judgment on appeal.

Nonetheless, father argues, "[t]here is no doubt that the court has the power to enforce prior settlements and agreements even if the agreement contains a provision that a court could not have ordered." Father relies on *Edwards and Edwards*, 73 Or App 272, 688 P2d 542 (1985). In *Edwards*, we said that a provision in the parties' property settlement agreement that spousal support would automatically terminate upon remarriage or cohabitation of the recipient party

---

[2] ORS 107.765(1) provides, in part, that, "[t]he purpose of mediation is to assist the parties in reaching a workable settlement of the contested issues instead of litigating those issues before the court."

would not be enforceable if imposed by the trial court on its own, but is otherwise generally enforceable if adopted by the parties' own agreement. *Id.* at 276.

Father is correct about the general rule stated in *Edwards*, but this case falls within the exception to that rule. In *Hearn and Hearn*, 128 Or App 259, 264, 875 P2d 508 (1994), we explained that

" *'short of a conflict with the statutory powers of the court,'* it is the responsibility of the trial court

" 'to discover and give effect to the intent of the parties as reflected in the incorporated settlement agreement.'

"* * * By way of contrast, * * * a stipulation that deprives the court of its authority to modify an award even when changed circumstances would require such a modification should not be approved." *Id.* at 264 (quoting *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982)) (citation omitted, emphasis added).

*See also Eidlin and Eidlin,* 140 Or App 479, 484, 916 P2d 338 (1996) ("Although a court is not *required* to accept parties' stipulated agreements as to what will constitute a change of circumstances, the trial court's decision to do so here was proper because the agreement is neither unfair *nor does it 'conflict with the statutory powers of the court.'* ") (quoting *McDonnal*, 293 Or at 779) (emphasis added).

Here, the court's adoption of the parties' stipulation operates to deprive the trial court of its statutorily mandated authority to modify parenting time because it delegates that authority to a nonjudicial designee. It is therefore in direct conflict with the statutory grant of that power to the court. It is also in conflict with the policy of the legislature underlying ORS 107.105 and ORS 107.135(1). When parents cannot agree on the issue of parenting time, *courts* are to perform the task of determining parenting time schedules. ORS 107.105(1)(b) provides, in part:

"If the parents have been unable to develop a parenting plan or if either of the parents requests the court to develop a detailed parenting plan, the court shall develop the parenting plan in the best interest of the child * * *."

ORS 107.135(1)(a) authorizes the modification of an order under ORS 107.105(1)(a) when it is in the best interests of the child. Because of the stipulation's conflict with the statutory powers of the court, we hold that the renewed incorporation of the parties' agreement by the trial court into the 1998 judgment was error and that the 1998 judgment must therefore be vacated.[3]

■      Finally, the parties disagree about what should occur on remand. Mother argues that we should remand for entry of a judgment with instructions that any new judgment cannot require the use of a specialist, or alternatively, that we should decide the pending motions for modification under our *de novo* standard of review. Our ruling leaves both parents' motions pending, and those motions require adjudication under the provisions of ORS chapter 107. In light of those considerations, we conclude that remand to the trial court for consideration of the parties' motions is appropriate. Resolution of a motion to modify visitation is a task that should be undertaken by the trial court in the first instance, in keeping with our statutory mandate as a reviewing court. As a result of our ruling, the judgment for attorney fees and costs that was predicated upon father prevailing on the merits must also be vacated.[4]

Provisions 1 and 8 of 1998 judgment vacated and remanded; provision 4 of 1998 judgment, other than award of custody to father, vacated and remanded; otherwise affirmed.

---

[3] Nothing in this opinion should be understood to prohibit parties from entering into an agreement in which they agree to utilize a mediator or an arbitrator on issues of custody and parenting time and in which they agree to stipulate into court what becomes their joint decision as a result of their agreement. *See* ORS 107.174. Whether such a stipulation should be incorporated within the court's judgment remains within the province of the court to decide. The vice of the parties' stipulation in this case is that it goes a step further and removes the court's decision-making authority in regard to modification of custody and parenting time orders and gives it to a nonjudicial designee.

[4] As to the 1995 agreement, we note that the provisions of ORCP 71 provide a mechanism for relieving parties from an erroneous judgment that might otherwise be unappealable.