Submitted on record and briefs June 2, 2000, affirmed October 31, 2001

In the Matter of
Tyler Cecil, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF CLATSOP COUNTY,
*Respondent,*

*v.*

TYLER CECIL,
*Appellant.*

88-J-2572; A102341

34 P3d 742

Kathryn G. McNannay and Bertoni & Todd filed the brief for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Holly A. Vance, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Youth appeals from a juvenile court judgment find-ing him within the jurisdiction of the court for an act that, if committed by an adult, would constitute sex abuse in the first degree. ORS 164.427. Youth's only challenge on appeal is to the trial court's denial of his motion to suppress statements that he made to police. For the reasons that follow, we affirm.

We summarize the following facts based on testi-mony presented at the hearing on youth's motion to suppress. In response to a call from the Clatsop County Juvenile Department, Detective Hanthorn interviewed youth, who was 12 years old at the time, in an office at the department, which was located in the Clatsop County Courthouse. Youth's father was present. At the outset of the interview, Hanthorn read from a *Miranda* card and further explained each *Miranda* right to youth. For example, she explained that the right to remain silent means that "you don't have to talk to me." After stating that he understood his rights, youth signed the card and agreed to talk to Hanthorn. The inter-view lasted for approximately 15 minutes, during which youth revealed that, on several occasions, he had sneaked into his 13-year-old stepsister's bedroom at night and touched her breasts and buttocks while she was sleeping. According to Hanthorn, youth appeared calm and relaxed throughout the interview. Hanthorn was not dressed in a police uniform during the interview and did not act in a threatening manner.[1]

The state filed a delinquency petition alleging that youth "did unlawfully and knowingly subject * * * a person under the age of 14 years, to sexual contact." Before trial, relying both on the state and federal constitutions, youth filed a motion to suppress the statements that he made to

---

[1] In his statement of facts on appeal, youth represents that Hanthorn "was in full uniform, with a firearm" and relies on that fact to support his position on appeal. That, however, is not an accurate statement of the record. Hanthorn testi-fied that she was dressed in "civilian clothing," not in uniform. Nothing in the rec-ord contradicts her testimony. Hanthorn also testified that she was wearing a fire-arm but was not sure if it was visible during the interview. No one testified that the gun was visible. Youth's father, in fact, stated that he did not see Hanthorn's gun and that Hanthorn did not act in a threatening manner.

Hanthorn during the interview. At the suppression hearing, the parties presented evidence regarding the voluntariness of youth's statements and the waiver of his *Miranda* rights. On examination by the state, youth's father testified that Hanthorn explained youth's rights to him. Youth's father also testified that he did not believe that youth was so mentally handicapped that he was unable to understand directions and conversations such as the one that he had with Hanthorn.

Youth presented conflicting testimony. Youth testified that, despite being given *Miranda* warnings, he did not understand that he could choose not to talk to Hanthorn. On cross-examination, however, he said he understood what Hanthorn had told him. Youth's psychologist, Dr. Hoggan, testified that youth has an intelligence quotient (IQ) of 73, which is considered low-average, slightly above mentally deficient. She stated that youth has a learning disability and, as a result, has a "very poor" ability to comprehend and interpret what he hears. Hoggan also explained that youth does not offer any resistance to questioning and that she "doubt[ed]" that youth had the capacity to assert his right to remain silent.

At the close of the hearing, youth's counsel argued that, considering youth's borderline intellectual functioning and his belief that he had to answer Hanthorn's questions, youth did not "voluntarily and knowingly" waive his rights. The trial court denied youth's motion, explaining its reasoning in a written letter as follows:

"There was no coercion by the officer or coercive tactics. [Youth's] father remained in the room and did not attempt to intervene or exert any rights for his son. The officer recognized she needed to proceed with care to determine if [youth] would talk with her. [Youth] was made aware of his right to remain silent and talk to an attorney. He chose to talk with the officer. He has low intelligence but not to the point where he could not understand his rights. Had there been some coercive tactic, such as requiring father to leave the room or an implied promise to be lenient, then there might be a basis to suppress the statements. Those factors simply are not present.

"The same result is required under federal decisions. *Colorado v. Connelly*, 479 US 157, [107 S Ct 515,] 93 L Ed 2d 473 (1986). Under the federal standard, a mental problem by itself does not require suppression, rather, coercive government conduct is a prerequisite to suppressing a confession."

On appeal, youth does not precisely identify the constitutional basis of his claims. Based on the constitutional grounds he preserved below and the cases upon which he relies on appeal,[2] we understand his argument to be that his *Miranda* waiver and subsequent statements were involuntary under Article I, section 12, of the Oregon Constitution, and the Fifth Amendment to the United States Constitution.[3] More specifically, youth asserts that, given his level of intelligence, he did not understand his rights and was "induced" into making statements "because of his misconception of the situation: that the officer was there to help him." *See generally State ex rel Juv. Dept. v. S.C.G.*, 77 Or App 543, 713 P2d 689 (1986) (reversing the juvenile court's finding of jurisdiction because Children's Services Division investigators made implied promises of leniency that induced the child into making incriminating statements).

██ In *State ex rel Juv. Dept. v. Deford*, 177 Or App 555, 34 P3d 673 (2001), we addressed the threshold issue of whether police overreaching is a necessary predicate to a youth's claim that his or her statements should be excluded as involuntary under Article I, section 12, of the Oregon Constitution. We held that it is. *Id.* at 572. Further, we recognized that the same rule applies under the federal analysis for involuntary statements. *See Colorado v. Connelly*, 479 US 157, 166, 170, 107 S Ct 515, 93 L Ed 2d 473 (1986). Because there was no police overreaching in *Deford*, we concluded

---

[2] *See State v. Vu*, 307 Or 419, 425, 770 P2d 577 (1989) (analyzing voluntariness of statement under Article I, section 12, of the Oregon Constitution); *State ex rel Juv. Dept. v. Sanders*, 56 Or App 724, 643 P2d 384 (1982) (analyzing voluntariness of waiver under the Fifth and Sixth Amendments to the United States Constitution); *State v. McGrew*, 38 Or App 493, 590 P2d 55, *rev den* 286 Or 149, *cert den* 444 US 867 (1979) (same).

[3] Article I, section 12, provides: "No person shall be * * * compelled in any criminal prosecution to testify against himself." The Fifth Amendment provides: "No person shall be * * * compelled in any criminal case to be a witness against himself[.]"

that the youth's state and federal constitutional voluntariness challenges in that case failed. *Id.* Further, we held that, because the youth's statements to police were voluntary and because he had validly waived his *Miranda* rights, his statements were admissible. *Id.* at 574.

■    Our analysis in *Deford* applies here, and it leads to the same conclusion. As was true in *Deford*, youth makes no explicit argument that the police engaged in overreaching here. Nor, on our *de novo* review of the record, does the evidence support any such conclusion. *See id.* at 572. With respect to youth's waiver of his *Miranda* rights, we have considered the requisite factors, including youth's age, experience, education, background, and intelligence. *See id.* at 573. We find that youth had a sufficient understanding of the *Miranda* warnings and the implications of waiving his rights. Thus, we conclude that youth validly waived those rights, and, so, the trial court did not err in denying youth's motion to suppress.

Affirmed.