Submitted on record and briefs August 6, reversed November 10, 2004, petition for review denied March 8, 2005 (338 Or 301)

### HOUSING AND COMMUNITY SERVICES
### AGENCY OF LANE COUNTY,
*Respondent,*

*v.*

### Donald LONG,
*Appellant.*

### 80-03-08597; A121958

100 P3d 1123

Donald Long filed the briefs *pro se*.

Dean S. Kaufman and Kaufman & Stewart filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiff, the Housing Authority and Community Services Agency of Lane County (HACSA), brought a forcible entry and wrongful detainer (FED) action to evict defendant Long from rental property. The trial court rendered judgment in favor of HACSA, and defendant appeals. We reverse.

The following facts are either undisputed, or, if not, they were found by the trial court and are supported by evidence in the record. On April 14, 1998, defendant entered into a month-to-month lease with plaintiff for the rental of federally subsidized housing. The lease provided that plaintiff could terminate the lease upon 30 days' notice if defendant gave false information regarding any facts material to the lease.

Defendant initially listed himself and two of his children as tenants in the residence. Later, he amended the lease to include a third child. During his entire tenancy, the mother of defendant's children, Alma Ronquillo, lived in the rental, but defendant never voluntarily disclosed that information to plaintiff.

In 1999, plaintiff began to suspect that Ronquillo was living in the rental, but it did not believe that it had enough evidence to ensure prevailing in a contested eviction until January 23, 2003. On that date, two months after she and the children had moved out of the rental and she had obtained a Family Abuse Prevention Act restraining order against defendant, plaintiff obtained an affidavit from Ronquillo in which she swore that she had been living with defendant since 1995, including during his tenancy in plaintiff's rental. On February 27, 2003, plaintiff issued defendant a notice of eviction for violating the lease agreement by fraudulently hiding the unauthorized presence of Ronquillo.

After an informal settlement conference failed to resolve the situation, an administrative law judge found that defendant had violated the terms of his lease and that plaintiff had the right to evict him. Plaintiff gave defendant until May 7 to vacate the apartment and on May 3 began FED proceedings under ORS 105.105 to 105.168. Instead of vacating the rental on May 7, however, defendant on that day hand

delivered to plaintiff's rental office a check for $10, which amounted to five months' prepaid rent.[1] Plaintiff deposited defendant's rent check the next day, but seven days later, on May 15, sent defendant a check for a full refund. Defendant did not cash the refund check.

The case proceeded to trial on May 21. After denying defendant's request for a continuance so that he could retain counsel, the court found that defendant had breached the lease agreement by failing to disclose Ronquillo's presence. The court issued a judgment of possession to plaintiff and ordered defendant to vacate the rental and to pay costs and attorney fees of $1,230.

On appeal, defendant raises 13 assignments of error, all but one of which raise arguments that either are not preserved, are not meritorious, or, if meritorious, are not prejudicial. We reject them without discussion.

One assignment, however, deserves attention. Defendant contends that, by accepting many months of rent while knowing that he was in violation of his lease, plaintiff waived its right to terminate the lease. Defendant relies on ORS 90.415(1), which provides, in part:

"Except as otherwise provided in this section, a landlord waives the right to terminate a rental agreement for a particular breach if the landlord:

"(a) During two or more separate rental periods, accepts rent with knowledge of the default by the tenant[.]"

Defendant argues that testimony at trial disclosed that plaintiff had "knowledge of the default" during several rental periods. Indeed, plaintiff's employee testified that, in at least eight different rental periods between 1998 and 2003, plaintiff received information from a number of state agencies indicating that Ronquillo lived with defendant in his rental.

However, when asked why plaintiff did not begin eviction proceedings before February 2003, plaintiff's employee responded:

---

[1] Plaintiff was charging defendant $2 per month in rent.

"Well, we have found that it's often very difficult to prove that there are not those guests in the home. Very often it is difficult to find the folks in the home that are living to be admitting that they live there, or saying to us that they live there. There are certain things we can do, but it can be very difficult to prove that. What changed in this case was at the point where Alma Ronquillo told * * * through the restraining order, we got a copy of that, and through the affidavit, when she and her daughter told us themselves that they indeed were living there * * * that Alma was indeed living there the entire time."

Plaintiff contends that this testimony reveals that, before receiving the affidavit from Ronquillo on January 23, plaintiff had only suspicion of a default, not "knowledge," and that only one rental period occurred between that time and the notice of eviction on February 27. Therefore, plaintiff argues, no waiver occurred.

We need not resolve the disagreement about the state of plaintiff's knowledge before receiving the affidavit. Even if plaintiff is correct, a waiver occurred. Plaintiff does not dispute that defendant paid rent and plaintiff accepted it on one occasion between plaintiff's receipt of Ronquillo's affidavit on January 23, 2003, and the initiation of termination proceedings on February 27. Further, on May 7, 2003, defendant tendered advance payment for five months' rent. Although plaintiff attempted to return that payment on May 15, that attempt was ineffective; plaintiff cashed defendant's rent check and did not provide a refund within the six-day period specified in ORS 90.415(2), which provides:

"For purposes of subsection (1)(a) of this section, a landlord has not accepted rent if within six days after receipt of the rent payment, the landlord refunds the rent."

Thus, plaintiff accepted rent with knowledge of defendant's default during at least two separate rental periods, thereby waiving the right to terminate the rental agreement. ORS 90.415(1)(a).

The fact that one of the periods occurred before plaintiff served notice of termination and one occurred after is not relevant for purposes of ORS 90.415(1)(a). That provision states that accepting rent on two occasions constitutes a

waiver "[e]xcept as otherwise provided in this section." Subsections (12) and (13) create exceptions that may occur when a landlord accepts rent for a period extending beyond the termination date. The necessary implication of those subsections is that, when an advance payment does *not* fit one of the exceptions, accepting it *can* count as waiver. None of the exceptions applies in the present case. Thus, by accepting the check for advance rent tendered on May 7, plaintiff accepted rent during a rental period separate from the earlier one. Plaintiff, therefore, accepted rent during two periods with knowledge of defendant's default, thereby waiving its right to terminate.

Reversed.