## In the Matter of the Marriage of

### Polly Ann McINNIS,
### nka Polly Ann Pattee,
*Respondent,*

*and*

### David Alexander McINNIS,
*Appellant.*

### 9401-60507; A118748

110 P3d 639

Thomas A. Bittner argued the cause for appellant. With him on the supplemental opening brief and the reply brief was Schulte, Anderson, Downes, Aronson & Bittner P.C. On the opening brief were Mark Johnson and Bennett, Hartman, Morris & Kaplan, LLP.

Ivan M. Karmel argued the cause and filed the briefs for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Husband appeals a judgment modifying spousal support and an amended judgment imposing sanctions for contempt. He advances a number of assignments of error, two of which we conclude are well-taken: (1) the trial court erred in refusing to enforce the terms of a marital settlement agreement that it had previously approved and incorporated into the dissolution judgment; and (2) the court erred in awarding wife her attorney fees. We therefore reverse the judgment modifying spousal support, vacate the judgment of contempt, and remand for reconsideration.

The facts relevant to the disposition of the appeal are not in dispute. The parties were married in 1972, and they separated in 1991. Wife petitioned for dissolution, and the case went to trial in 1994. Each party was represented by counsel. After several days of trial, the parties entered into a detailed, 25-page marital settlement agreement. Among other things, the parties agreed that husband would pay wife spousal support of $5,000 per month for approximately seven years. The agreement also provided that "[a]ll spousal support payments as provided herein shall be non-modifiable." The agreement then restated that intention in four different ways.

First, the agreement expressed the parties' intention in terms of a waiver of the right to seek modification: "Both parties waive any and all rights to modify the spousal support provision in this Agreement."

Second, the agreement expressed the same intention in terms of estoppel: "Wife is estopped to modify the spousal support by increasing or extending the payments. Husband is estopped from reducing or terminating the spousal support payments except upon payment as provided herein."

Third, the parties restated their intention with an indemnification clause:

"Notwithstanding the non-modifiability of the spousal support payments as provided herein, if Wife is successful in

convincing a Court that the spousal support should be modified, then Wife shall indemnify and hold Husband harmless from any loss, additional payments or damages incurred by any such court ruling, including any attorney fee expense."

Finally, the parties stated yet again their intention, this time in terms of altering the authority of the court:

"It is the intent of each party to divest the Court of the jurisdiction conferred upon it pursuant to the provisions of ORS 107.135 pertaining to modification of spousal support. While the parties understand that the Court cannot normally be divested of such jurisdiction to modify the spousal support provisions of a Judgment, in entering into this Agreement, they specifically rely on the Court's ruling[s] in the following cases:

"*Hurner and Hurner*, 179 Or 349, 355[, 170 P2d 720] (1946);

"*Pearce and Pearce*, 82 Or App 714[, 728 P2d 974 (1986), *rev den*, 303 Or 172 (1987)]."

The parties also included in the agreement a severability clause, which provides, in part:

"In the event any provision of this Agreement is deemed to be void, invalid or unenforceable, that provision shall be severed from the remainder of this Agreement so as not to cause the invalidity or unenforceability of the remainder of this Agreement. All remaining provisions of this Agreement shall continue in full force and effect."

The parties signed the agreement and submitted it to the court. The court, in turn, entered a "Stipulation and Judgment of Dissolution of Marriage," which contained provisions concerning the court's approval of the marital settlement agreement, including the following statement concerning the nonmodifiability of spousal support:

"11.  The parties' Marital Settlement Agreement * * * is adopted and approved by the Court as just, proper, equitable and fair in all respects.

"12.  The court specifically approves, ratifies and validates the spousal support agreement of the parties that such spousal support payments shall be non-modifiable by the parties or the Court. Petitioner is estopped to modify

the spousal support by increasing or extending the payments. Respondent is estopped from reducing or terminating the spousal support except upon death of the parties or payment as provided herein."

Several months before husband's spousal support obligation was scheduled to end, wife filed a motion to modify, in which she asked the court to extend indefinitely husband's obligation to pay spousal support of $5,000 per month. The trial court entered a show-cause order. Husband responded by asserting that, among other things, the dissolution judgment that had been approved by the court precluded modification of spousal support. On the basis of that provision of the dissolution judgment, husband moved for dismissal or, in the alternative, judgment on the pleadings and enforcement of the settlement agreement.

The trial court denied husband's motion. In its order, the court explained its decision in the following terms:

"The provisions in the parties['] Property Settlement Agreement and Judgment of Dissolution that attempted to divest this court of jurisdiction to modify spousal support and to require wife to indemnify and hold husband harmless from any modification to the terms of the Judgment for Dissolution that the court might hereinafter order are void as against public policy in conformance with the holding in *Hearn and Hearn*, 128 Or App 259, 875 P2d 508 (1994). The court finds that said provisions conflict with the statutory powers of the court and are accordingly unenforceable."

Discovery ensued. Wife served a request for production of documents, with which husband did not fully comply. Wife filed a motion to compel. The trial court granted the motion and ordered husband to produce certain materials; husband failed to do so. Wife then moved for an order finding husband in contempt and imposing sanctions. Among other things, wife sought to have husband pay her attorney fees for the support modification litigation. The court issued a show-cause order regarding the contempt.

Following several hearings on the spousal support modification issue and the contempt issue, the court entered two judgments. In its "Judgment Modifying Spousal Support," the court modified the spousal support award to

require husband to pay wife $6,000 per month indefinitely. In addition, the judgment included the following provisions:

"2. Pursuant to the petitioner's Rule 68 submission previously submitted to this Court, and the respondent's objection thereto, and hearing thereon being held on July 17, 2002, it is hereby ORDERED that petitioner shall have money judgment against respondent on account of her attorney fees in the sum of $19,553 and $579.56 in costs.

"3. The court having found the respondent to be in willful contempt of court for disobeying this court's order to compel, and the court having previously indicated in that order it was deferring imposition of sanctions until the hearing on the merits it is hereby ORDERED that in addition to those statutory factors recited by the court on July 17, 2002, as the basis for its award of attorney fees to the petitioner, that the court further finds that the award of attorney fees to petitioner is intended as a remedial sanction that it had previously deferred. The court makes its finding that its award of attorney fees to petitioner is based upon all the reasons set forth in petitioner's attorney's Rule 68 Affidavit. By way of further sanctions, the court strikes the provision of the Decree signed 12/1/94 and in the Marital Settlement Agreement incorporated therein, ¶5, that requires the wife to indemnify and hold husband harmless from any court ruling that modifies spousal support as the court has found that * * * modification provision to be void as against public policy and further that this provision was one-sided, unconscionable, reprehensible, and a result of over-reaching by husband in that the Decree and Marital Settlement Agreement were drafted to benefit the husband."

The court entered an "Amended Judgment of Contempt." The court found that husband's failure to provide discovery was willful and that none of his excuses for not providing discovery as ordered was credible. The court stated that it had "found that an independent basis for the award of attorney fees was this court's previous finding of contempt. * * * The award of [attorney fees and costs in the initial judgment] is found by this court to be an appropriate remedial sanction for respondent's contempt of court." The court imposed no further sanction "beyond those set forth in that money judgment."

On appeal, husband first assigns error to the trial court's decision to modify the spousal support provisions of the original dissolution judgment, which incorporated the parties' marital settlement agreement. He advances a number of arguments in support of his contention that the trial court erred in modifying the judgment. We find dispositive his argument that the court erred in failing to give effect to the provision in the marital settlement agreement—which the court previously had approved—waiving any right to seek a modification of spousal support.

The parties' arguments on this point appear to talk past one another. Husband relies on the portion of the agreement in which both parties waived any right to seek a modification of the support obligation:

> "The parties bargained and agreed in their [marital settlement agreement] that each of them waived any claim to future modification of spousal support, that they released each other from any claim for support not specified in the agreement, and that each was estopped to assert any future claim for support modification. The dissolution court 'adopted and approved' and 'confirmed and ratified' the agreement and incorporated it into the dissolution judgment.

> "Despite those facts, the same trial judge on modification held the judgment unenforceable because 'it conflict[ed] with the statutory powers of the court[.]' "

According to husband, particularly in light of the legislature's express approval in ORS 107.104 of marital settlement agreements in general and the use of ordinary contract remedies in particular, "the parties' waiver and their release of future modification rights in their 1994 agreement, having been approved by the court at that time and incorporated in the dissolution judgment, are enforceable as a matter of contract law" under that statute.

In response, wife essentially ignores husband's waiver argument and seizes on the portion of the agreement in which the parties purport to divest the trial court of authority to modify support:

> "The trial court did not err. The parties could not lawfully, by contract, agree to divest the court of its jurisdiction

to modify support. The principle that courts cannot enforce agreements that conflict with the statutory powers of the court remains good law and is not inconsistent with modern statute or case law that have preserved the exception to the general rule of enforceability of marital settlement agreements * * * where such agreements conflict with the statutory powers of the court."

We begin our disposition of the foregoing arguments by setting out the relevant rules of law. It is well established that the parties to a dissolution proceeding "may and often do enter into separate agreements regarding the terms of the dissolution." *Webber v. Olsen*, 330 Or 189, 194, 998 P2d 666 (2000). The trial court is not obligated to approve such agreements; they always are subject to the court's review for fairness and equity under the circumstances. *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982). Once approved by the court, however, "agreements entered into by the parties are to be enforced as a matter of public policy." *Id.*

The Supreme Court has explained the nature of that public policy in terms of the freedom of parties to enter into contracts:

> " 'It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice; and it is only when some other overpowering rule of public policy intervenes, rendering such agreements unfair or illegal, that they will not be enforced.' "

*Id.* (quoting *Eldridge et al v. Johnston*, 195 Or 379, 405, 245 P2d 239 (1952)); *see also Prime v. Prime*, 172 Or 34, 40, 139 P2d 550 (1943) ("The obligation of contracts must be respected and their terms enforced."); *Edwards and Edwards*, 73 Or App 272, 276, 698 P2d 542 (1985) ("when the parties voluntarily enter into a property and support agreement, and the agreement is approved by the court and incorporated into the decree, countervailing principles of public policy prevail and the parties' agreement generally will be given effect").

The court also has described the public policy in terms of fairness and equity to parties who enter into such agreements with the understanding that they are enforceable:

> "Where parties have foregone their opportunity to litigate disputes and have chosen instead to enter into an agreement, their reliance on the agreement can be presumed. Inequity may result if this court adopts a policy of less than full enforcement of mutually agreed upon property and support agreements."

*McDonnal*, 293 Or at 779; *see also St. Sauver and St. Sauver*, 196 Or App 175, 180, 100 P3d 1076 (2004) (quoting *McDonnal*).

At one time, when such agreements were incorporated into dissolution judgments, contractual remedies were not available to enforce them; they were enforceable only by means of the remedies that the law affords for enforcement of judgments. *Webber*, 330 Or at 196. In 2001, however, the Legislative Assembly enacted ORS 107.104, which includes both a strong declaration of support for the enforceability of marital settlement agreements and a statement that—contrary to prior case law—such agreements, whether incorporated into a dissolution judgment or not, are subject to contract remedies:

> "(1)  It is the policy of this state:
>
> "(a)  To encourage the settlement of suits for marital annulment, dissolution or separation; and
>
> "(b)  For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.
>
> "(2)  In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:
>
> "(a)  As contract terms using contract remedies;
>
> "(b)  By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c)    By any combination of the provisions of paragraph (a) and (b) of this subsection."[1]

The general rule that marital settlement agreements are fully enforceable is subject to two exceptions, reflected both in the new statute and in the case law. The first exception is that marital settlement agreements will not be enforced if doing so would contravene the law. ORS 107.104(1)(b) (it is the policy of the state "[f]or courts to enforce the terms of [marital settlement agreements] to the fullest extent possible, except when to do so would violate the law"); *McDonnal*, 293 Or at 779 ("[S]hort of conflict with the statutory powers of the court, we recognize the court's responsibility to discover and give effect to the intent of the parties as reflected in the incorporated settlement agreement.").

In *Hutchinson and Hutchinson,* 187 Or App 733, 69 P3d 815 (2003), for example, we declared unenforceable a provision in a marital settlement agreement that would make a modification of spousal support retroactive to a particular date, as the parties had agreed. We concluded that the provision could not be reconciled with ORS 107.135(6), which provides that the court does not have power to modify a dissolution judgment as to obligations that have accrued before the filing of the motion to modify. *Id.* at 747.

In *Hearn and Hearn,* 128 Or App 259, 875 P2d 508 (1994), in contrast, we upheld the validity of a provision in a marital settlement agreement that authorized the court to reconsider spousal support some four years later, whether or not a change in circumstances had occurred. We reached that conclusion because, among other things, the provision did not "deprive the court of any statutory authority[.]" *Id.* at 265-66.

The second exception to the general rule of enforceability of marital settlement agreements is that, even if enforcement would not directly violate the law, they will not

---

[1] ORS 107.104, enacted in 2001, "applies to marital annulment, dissolution or seperation decrees entered before, on or after the effective date of this 2001 Act." Or Laws 2001, ch 203, § 3. The effective date was May 25, 2001. *Id.* at § 10. In the same enactment, the legislature also included a nearly identical provision that applies to settlement agreements arising out of actions to modify dissolution judgments. *Id.* at § 4, now codified at ORS 107.135(13).

be enforced if doing so would contravene public policy. ORS 107.104(1)(b) (marital settlement agreements are to be enforced "to the fullest extent possible" unless enforcement "would clearly contravene public policy"); *Hearn*, 128 Or App at 265 ("[N]egotiated agreements as to the amount and duration of spousal support should be enforced unless they deprive the court of its statutory authority or contravene some other overriding public policy.").

In *Heinonen and Heinonen*, 171 Or App 37, 14 P3d 96 (2000), for example, we held unenforceable a provision in a marital settlement agreement that delegated authority to determine parenting time to a nonjudicial third party. We reasoned that the provision "is in conflict with the policy" at least implicitly reflected in relevant statutes that, when parents cannot agree on the issue of parenting time, it is the courts—and not a third party—who should resolve the dispute in a way that protects the best interests of the child. *Id.* at 144-45.

In contrast, in *Pope and Pope*, 73 Or App 242, 698 P2d 518 (1985), *aff'd*, 301 Or 42, 718 P2d 735 (1986), we enforced a provision in a marital settlement agreement providing that the husband was to pay spousal support until a specified date, even if the wife remarried before that date. We explained that we perceived no public policy that would be advanced by not giving the parties the benefit of their bargain. *Id.* at 248.

Similarly, in *Porter and Porter*, 100 Or App 401, 786 P2d 740, *rev den*, 310 Or 281 (1990), we upheld the validity of a provision in a marital settlement agreement requiring the husband to pay one dollar per month spousal support indefinitely, the effect of which was essentially to artificially preserve the court's authority to modify the award. We acknowledged that the court itself probably would have lacked authority to make such a one dollar support award under the circumstances that existed at the time of the dissolution. *Id.* at 403. Nevertheless, we concluded that the provision was valid, because it had been freely negotiated by the parties and not imposed by the court. *Id.* at 403-04. "Courts should enforce, not disturb, negotiated settlement agreements," we

explained, "unless there is an overriding public policy reason for not doing so." *Id.* at 404.

And, more recently, in *Eidlin and Eidlin,* 140 Or App 479, 916 P2d 338 (1996), the parties agreed that the husband's spousal support obligation could be modified based on the occurrence of events that, at least arguably, would not otherwise have constituted a change of circumstances sufficient to justify a motion to modify. We rejected the husband's contention that a stipulation that provides for a more permissive basis for seeking modification than does the statute is unenforceable. We reasoned that, as long as the stipulation does not purport to deprive the court of its statutory authority, no public policy necessitates its rejection. *Id.* at 484.

■       With the foregoing principles in mind, we turn to the provisions of the marital settlement agreement that are the focus of the parties' dispute in this case. As we have noted, the agreement expressed the parties' intention to make the spousal support award nonmodifiable; that much is clear and uncontested. In fact, the parties expressed that intention in four different ways: (1) waiver of the right to seek modification; (2) estoppel to seek modification; (3) indemnification should wife nevertheless seek modification; and (4) deprivation of the court's statutory authority to modify. The agreement also contained a severability clause. The trial court approved the agreement in its entirety, including the severability and antimodification provisions.

In the modification proceeding, however, the trial court concluded that the antimodification provisions were void as against public policy because they sought to deprive the court of its statutory authority to modify spousal support awards. We agree with the trial court up to a point. As we have noted, both statute and case law provide that, although marital settlement agreements generally should be enforced to the fullest extent possible, there is an exception for provisions that conflict with the statutory authority of the courts. *Hutchinson,* 187 Or App at 745-46. In this case, one provision of the marital settlement agreement expressly states the parties' intention "to divest the Court of the jurisdiction conferred upon it pursuant to the provisions of ORS 107.135 pertaining to modification of spousal support." That the parties cannot do.

That does not end the matter, however. As we have noted, the agreement did not just purport to divest the court of jurisdiction to modify. It separately provided that the parties also waived the right even to invoke the jurisdiction of the court and that the parties are estopped from doing so. Merely because the provision purporting to divest the court of jurisdiction to modify fails, it does not necessarily follow that the balance of the agreement concerning the modification of spousal support fails with it. The parties, as noted, included a severability clause, which requires that any provision that is invalid be severed from the agreement, leaving the remaining provisions "in full force and effect." The validity of the remaining provisions, including the waiver of the right to seek spousal support, remains before us. We turn to that issue.

Because it is dispositive, we begin with the provision in which "[b]oth parties waive any and all rights to modify the spousal support provision in this Agreement." The validity of that provision turns on the application of the general rule that the terms of marital settlement agreements are to be enforced to the fullest extent possible unless doing so would contravene the statutory authority of the court or clearly violate some other public policy. ORS 107.104(1)(b); *McDonnal*, 293 Or at 779.

The first question, then, is whether waiving the right to seek a modification of spousal support contravenes the statutory authority of the court. Neither party has identified a statute that conflicts with the waiver provision at issue, and we are aware of none. It could be argued that the waiver indirectly interferes with the authority of the court to modify spousal support awards as authorized by ORS 107.135, but we do not find the argument persuasive. The waiver provision in this case has nothing to do with the authority of the court; rather, it involves only whether the parties may invoke it. ORS 107.135 provides that the court has authority to modify a dissolution judgment only "upon motion of either party." Thus, the authority of the court to modify a dissolution judgment always has been dependent on a decision of one of the parties to invoke its authority by filing an appropriate motion. If a party who otherwise might have perfectly good grounds for a modification motion decides, for

any reason, not to file one, the court is without authority to act. The parties' agreement in this case changes nothing in that regard. It involves only a decision between the parties whether they will or will not file such motions. They decided that they will not. The court's statutory authority remains unchanged.

The second question is whether, even if the parties' agreement does not contravene a statute, it nevertheless should not be enforced because doing so would clearly violate some other public policy. Again, the parties have identified no public policy that would be abrogated, and we can envision none.

In that regard, we note that adults with the capacity to do so generally are free to waive a panoply of rights, statutory and constitutional, so long as the waiver is knowing and intentional. *See, e.g., Bennett v. Farmers Ins. Co.*, 332 Or 138, 156, 26 P3d 785 (2001) ("[T]his court has described the doctrine of waiver as applying broadly to any contract term."); *State v. Hunter*, 316 Or 192, 199-200, 850 P2d 366 (1993) (waiver of statutory right to speedy trial); *Housing and Community Services Agency v. Long*, 196 Or App 205, 209, 100 P3d 1123 (2004), *rev den*, 338 Or 301 (2005) (waiver of statutory right to seek eviction of tenant); *State v. McKenzie*, 195 Or App 318, 322, 97 P3d 1242 (2004) (waiver of constitutional right to counsel); *DK Investment Co. v. Inter-Pacific Development Co.*, 195 Or App 256, 263, 97 P3d 675 (2004) (statutory rights can be waived if there is "a clear, unequivocal, and decisive act of the party showing such a purpose"); *McMillan v. Follansbee*, 194 Or App 145, 154, 93 P3d 809 (2004) ("[I]t is possible to waive a statutory right to partition, just as it is possible to waive other statutory rights."); *State v. Morrow*, 192 Or App 441, 444-45, 86 P3d 70, *rev den*, 337 Or 282 (2004) (waiver of constitutional right to jury trial); *State v. Kimsey*, 182 Or App 193, 203, 47 P3d 916 (2002) (waiver of constitutional double jeopardy protections); *State ex rel Juv. Dept. v. Cecil*, 177 Or App 583, 588, 34 P3d 742 (2001) (waiver of *Miranda* rights).

The general rule that statutory rights are subject to knowing and intentional waiver has been applied to the right to various types of statutory support. In *Moore v. Schermerhorn*,

210 Or 23, 307 P2d 483 (1957), for example, the Supreme Court addressed the validity of a prenuptial agreement between a husband and wife providing that "[e]ach of the parties hereto agrees to make no claim to the separate property of the other party, either during the joint lives of the parties hereto or thereafter[.]" *Id.* at 30. The dispute over the validity of the agreement arose when the wife died and the husband attempted to claim the statutory right of a surviving spouse to homestead and exempt property. The court first addressed whether prenuptial agreements generally are enforceable. After answering that question in the affirmative, the court turned its attention to whether a waiver of "claims of probate homestead and exempt property is barred by supervening public policy." *Id.* at 39-40. In brief, the court found no such supervening public policy. The court explained that, "[i]n view of the various ways in which the homestead exemption can be waived, we cannot say that in this state there is any paramount public policy adverse to such waiver[.]" *Id.* at 43. The same rule has been applied to a surviving spouse's statutory right to an elective share of an estate. *Sheldon v. Sheldon*, 163 Or App 256, 265, 987 P2d 1229 (1999) (waiver of statutory right to take elective share); *Simmons v. Simmons*, 82 Or App 540, 544, 728 P2d 921 (1986) (same).

The rule also has been applied to agreements including provisions waiving a spouse's entitlement to receive spousal support. To be sure, at one time, the courts regarded such waivers as contrary to the state's interest in "the adequate support of its citizens." *Reiling v. Reiling*, 256 Or 448, 450, 474 P2d 327 (1970). More recently, however, the courts have embraced the application of the general rule to spousal support.

In *Unander v. Unander*, 265 Or 102, 506 P2d 719 (1973), the Supreme Court addressed the validity of a provision in a prenuptial agreement waiving spousal support. Expressly overruling *Reiling*, the court concluded that the better view is that "[a] provision providing that no alimony shall be paid will be enforced unless the spouse has no other reasonable source of support." *Id.* at 107.

■ Similarly, in *Bridge and Bridge*, 166 Or App 458, 464, 998 P2d 780, *rev den*, 330 Or 553 (2000), the parties

entered into a prenuptial agreement that included the following provision:

> "RELEASE OF MUTUAL PROPERTY RIGHTS. Husband and Wife mutually waive any and all property rights in the separate property of each, and further waive and release any claim for support that may accrue by reason of their marriage that may arise by operation of law upon their marriage."

The trial court declined to enforce the agreement according to its terms, and we reversed. Citing *Unander*, we explained that a waiver of spousal support is fully enforceable as long as the terms of the agreement as a whole are fair and equitable and the spouse is not without reasonable means of support. *Id.* at 464-65; *see also Simmons*, 82 Or App at 544 ("Express authority to waive spousal support is not required."); *cf. Day v. Vitus*, 102 Or App 97, 792 P2d 1240, *rev den*, 310 Or 281 (1990) (upholding validity of prenuptial agreement that included waiver of spousal support).

If no public policy forecloses the right of parties to waive spousal support entirely, *a fortiori*, they can agree to waive the right to seek modification of support. Thus, for example, in *Pope* the parties agreed that spousal support would not terminate before a specified date, even if the wife remarried before then. When the wife, in fact, remarried before the specified date, the husband contended that the agreement was void and that the wife's remarriage constituted a change of circumstances that required the termination of his support obligation. The wife invoked the agreement and urged the continuation of support payments. We agreed with the wife. Although it is clear that the parties cannot deprive the court of authority to modify, we explained, that does not mean that the parties' agreement was not enforceable. *Pope*, 73 Or App at 248. Citing the portion of *McDonnal* that emphasized the potential inequity of failing to enforce the terms of marital settlement agreements, we concluded that, notwithstanding the court's continuing *authority* to modify, "we perceive no public policy reason" for failing to enforce the parties' agreement not to seek such modification. *Id.*

We are aware of *dictum* in one decision that broadly declares that parties cannot agree to preclude modification. A closer examination of the decision, however, reveals that the court was commenting on the validity of agreements *eliminating the authority of the courts to modify*, not on the validity of waivers of the right of parties to seek modification.

In *Garnett v. Garnett*, 270 Or 102, 105, 526 P2d 549 (1974), the parties executed a marital settlement agreement requiring the husband to pay the wife certain household expenses and further providing that the remarriage of the wife should not relieve the husband of his obligations under the agreement. After both parties had remarried, the husband moved for a modification of the support obligation, and the trial court granted the motion. We reversed, concluding that we "should not save a person from the bargain he makes under fair bargaining conditions, after he finds the consideration unattractive." *Garnett v. Garnett*, 17 Or App 307, 312, 521 P2d 1054 (1974).

The Supreme Court reversed. The court explained that it "took review of this case because we feared that the opinion of the Court of Appeals cast doubt on the established law of this state concerning a trial court's authority to modify provisions of a divorce decree." *Garnett*, 270 Or at 105. According to the court, the law is settled that "provisions for support may be modified or done away with upon a showing of a sufficient change of circumstances since the decree, despite any provision the agreement and/or decree may have that the support provisions are not subject to change." *Id.* The court went on to hold that, because of a substantial change in the parties' circumstances, the trial court correctly modified the support obligation. *Id.* at 107-08.

It is clear to us that the court's statements concerned only the extent to which any settlement agreement alters the authority of the courts. To begin with, the agreement at issue said nothing at all about waiver of the right to seek modification; in fact, the agreement in *Garnett* said nothing about modification at all. No one presented any argument about the authority of parties to waive their right to seek modification, and nothing in the opinion purports to address that issue. Moreover, the court itself explained that it took the case to

comment on "a trial court's authority to modify provisions of a divorce decree." That is, it wished to address this court's apparent misconception that marital settlement agreements generally are not subject to modification. *Id.* at 105.

That is precisely how we have since read *Garnett*. In *Pope*, the husband contended that our decision to enforce the parties' agreement that remarriage would not require immediate termination of spousal support was contrary to the court's decision in *Garnett*. We disagreed. We explained that, after *Garnett*, "it is clear that the terms of an incorporated settlement cannot deprive a court of its authority under ORS 107.135(1)(a) and (2) to set aside, alter, or modify any obligation deemed to be support[.]" *Id.* at 248. But that, we said, is all *Garnett* stands for. *Id.*

To sum up, then, we evaluate the validity of the parties' waiver provision in light of the general rule that marital settlement agreements are to be enforced "to the fullest extent possible," ORS 107.104(1)(b), unless doing so would violate the law or clearly contravene some other public policy. We are unable to identify any law that would be violated by enforcement of the parties' agreement. Likewise, we are unable to identify any public policy that would be threatened by giving the agreement full effect. We conclude that the parties' waiver of the right to seek modification of spousal support is valid and enforceable. The trial court therefore erred in declaring the modification provisions invalid and in granting wife's motion to modify. Because of our conclusion concerning the validity of the waiver provision, we need not address the parties' arguments about the remaining provisions concerning spousal support.

Husband also assigns error to the trial court's award of attorney fees to wife. Normally, when we reverse a trial court's judgment, we also reverse the court's award of attorney fees. *See* ORS 20.220(3)(a) ("If the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed[.]"). In this case, however, the award of attorney fees and the imposition of a contempt sanction appear to be intertwined. That is, we cannot tell if the trial court would have imposed a contempt sanction in the amount of wife's attorney fees even if she did

not prevail. For that reason, the contempt matter must be vacated and remanded to the trial court for reconsideration.

Judgment modifying spousal support reversed; judgment of contempt vacated and remanded for reconsideration.